CITY OF HUTCHINSON v. KANSAS BITULITHIC CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 22, 1917.)

No. 4622.

1. MUNICIPAL CORPORATIONS ⬤➡347(1)—PAVING CONTRACTS—LIABILITY OF SURETY—INVALIDITY OF PRINCIPAL OBLIGATION.

A surety on the bond given by a paving contractor to secure the performance of the contract cannot, if the contract was invalid because in excess of the mayor's authority, be held liable for the contractor's failure to conform to the specifications.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 876.]

2. MUNICIPAL CORPORATIONS ⬤➡368—PAVING CONTRACT—BREACH OF GUARANTY.

Where a paving contract as signed by the mayor required the contractor to construct the paving so that it would endure without need of repairs for one year after its completion and acceptance, and provided that

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the city engineer should be the sole arbitrator to determine whether the paving conformed to the guaranty, and that when the engineer should determine that any defects existed therein he should give the contractor notice, and if the contractor failed to make good such defect the guaranty should be held to have been broken, while the specifications simply required the contractor to keep the paving in good repair for one year, and to make repairs promptly when required by the city council by written order of the mayor, the city cannot recover for breach of the guaranty, where it was admitted that the city engineer had given no notice of the defects during the year, on the theory that the mayor had no authority to include that provision in the contract, since, even if that contention be sound, the rights of the parties must then be determined by the specifications, which do not contain the guaranty.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901.]

3. MUNICIPAL CORPORATIONS ⬅339(2)—PAVING CONTRACT—AUTHORITY OF MAYOR—SPECIFICATIONS.

Under a provision of the specifications that if any part thereof should appear obscure the interpretation of the city engineer should be final, the mayor had authority to include such a condition as part of the guaranty, it being for the benefit of the city, since it did not deprive the council of their power, if they discovered defects, of ordering the engineer to give notice thereof, and in the event of his refusal of removing him and appointing another, who would give the notice.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 870.]

4. MUNICIPAL CORPORATIONS ⬅368—PAVING CONTRACT—REPAIRS—DUTY OF CONTRACTOR.

The contract, fairly interpreted, required that the contractor so construct the paving that it would be accepted by the city authorities, and, in proof that the paving was what it purported to be, the contractor was bound to maintain it in repair if any defects appeared during the first year.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901.]

5. MUNICIPAL CORPORATIONS ⬅375—PAVING CONTRACTS—ACTIONS—FRAUD.

In an action at law by a city to recover for breach of a guaranty of paving, where the contractor relied on the failure of the city engineer to give notice of the necessity of repairs as required by the contract, the city could set up in reply that the engineer was corruptly hired by the contractor not to give such notice, since, when used purely for purposes of defense, not of affirmative relief, fraud not only may be, but must be, availed of in an action at law.

6. PLEADING ⬅269—AMENDMENT AT TRIAL—REFUSAL.

In an action at law by a city to recover for breach of guaranty of paving, where the contractor relied on the failure of the city engineer to give notice of defects as required by the contract, it was not error to refuse to permit the city in the midst of the trial to amend its reply, so as to allege that the contractor corruptly hired the city engineer not to give notice, which was a fact which must have been known to the city at all times, especially where the engineer's testimony, already given, and the offer to amend, showed that the purported amendment was merely a paper defense.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 811–815.]

7. PLEADING ⬅17—AMENDMENT—REPLY—CONCLUSION—FRAUD.

Where the defense to an action for breach of a paving contract was the failure of the engineer to give notice of defects, an offer by the city to amend its reply to allege that the engineer had had no previous ex-

perience with paving of that character, that as soon as a portion of it was laid, and before its completion, he had been fraudulently employed by the contractors to prepare testimonials praising the pavement, which were circulated by the contractor, that thereby he corruptly and fraudulently became the employé and champion of the contractor, and by reason thereof, and of his incompetency, he fraudulently neglected and refused to give the required notice, the charge of fraud and corruption was merely an argumentative conclusion of the pleader from the fact that the city engineer commended the paving, and it was not error to refuse to permit the amendment to be filed.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 38, 41, 195, 350.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the City of Hutchinson against the Kansas Bitulithic Company and another. Judgment for defendants, and plaintiff brings error. Affirmed.

F. L. Martin and Howard S. Lewis, both of Hutchinson, Kan. (Van M. Martin, William G. Fairchild, and Walter F. Jones, all of Hutchinson, Kan., on the brief), for plaintiff in error.

A. C. Malloy, of Hutchinson, Kan., and J. M. Head, of Kansas City, Kan. (C. M. Williams, of Hutchinson, Kan., on the brief), for defendants in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. July 3, 1905, the city of Hutchinson, Kan., entered into a contract with the Kansas Bitulithic Company for the paving of five blocks of its Main street. The United States Fidelity & Guaranty Company became surety upon a bond for the faithful performance of this contract. The work was completed and accepted by the city in January, 1906. The present action was brought against the Paving Company and the Surety Company in February, 1910, to recover $26,000 damages for a breach of the bond through failure to perform the contract. The court directed a verdict for defendants, and the city brings error.

There are only two questions in the case of sufficient importance to require discussion.

The contract signed by the paving company, and in the name of the city by its mayor and clerk, contained the following provision:

"The contractor, the Kansas Bitulithic Company, agrees to construct the said pavement with such material and in such a manner that the same shall endure without the need of repairs for a period of one (1) year from and after the completion and acceptance thereof.

"It is expressly agreed that the city engineer shall be the sole and final arbitrator to determine at any and all times within said period of one year whether or not said pavement conforms to the aforesaid guarantee, and that when said engineer shall determine that any faults, defects, or imperfections exist in said pavement during the period aforesaid, and he shall give the contractor, the Kansas Bitulithic Company, or its agents notice thereof in writing, if the said contractor shall fail to make good such fault, defect, or imperfection within ten (10) days after the receipt of such notice aforesaid, then this guarantee shall be held to have been broken and said contractor shall be

liable to pay to the city of Hutchinson the cost of making good such fault, defect, or imperfection. Said contractor agrees to keep and maintain in the city of Hutchinson an office and agent upon whom notice of the aforesaid may be served."

It was conceded on the trial that nothing was done by the city engineer during the year following the acceptance of the paving to fix liability on the Paving Company under this provision. The trial court ruled that a determination by the engineer that the paving was defective, with notice to the company, was a condition precedent to liability, and for this reason directed a verdict for defendants. The city challenges that ruling upon two grounds: (1) It says that the quoted provision of the contract is void, and was inserted without the knowledge or consent of the city council, and that it is such a departure from the plans and specifications for the paving that the mayor under his power to sign a contract on behalf of the city was not authorized to embody this provision in it. (2) That the Paving Company corruptly induced the city engineer not to comply with the terms of the quoted provision. We will examine these objections in their order.

[1] The bond by its express terms was given to secure the performance of a contract between the city and the Paving Company "dated on the 3d day of July, A. D. 1905." The only contract between these parties bearing that date is the one which embodies the quoted provision. If that contract is not secured by the bond, then there is no principal contract to support a liability against the Surety Company, for it is elementary that a surety cannot be held beyond the contract between the principals.

[2] It is urged, however, by counsel for the city, that we ought to go back to the written specifications, the bid of the Paving Company, and its acceptance by the city. These, it is insisted, constitute the real contract. But if we do that the city is in no better position. The city contends that the Paving Company was bound by the contract "to construct the said pavement with such material and in such a manner that the same shall endure without the need of repairs for a period of one year from and after the completion and acceptance thereof." It is the contention of the Paving Company that its contract, when all its terms are considered, bound it to construct the paving under the supervision of the city engineer, in accordance with the specifications, and if any defects appeared in it during the first year after its acceptance, that the Paving Company would, upon notice, repair all such defects without expense to the city. That was the controverted question between the parties. Now, the provision which we have quoted above is the only language anywhere found in the dealings between the parties which gives any support to the contention of the city that the paving was to be so constructed as not to need repairs during the first year. If that provision is stricken out of the contract there is nothing to support the city's contention. On the contrary, if we go back to the specifications, the language there only requires the Paving Company to keep the paving in repairs during the first year. The language of the specifications is as follows:

"The contractor or contractors, in consideration of the price herein stipulated to be paid and received for the construction of said pavement, is hereby bound and does hereby agree to maintain and keep said pavement in good repair at his own expense for and during a period of one (1) year from the date of the final acceptance of the work, so that at the end of said period said pavement shall be in good serviceable condition, and free from any defects or settlements that will impair its usefulness or durability as a roadway; it being understood that said maintenance and repairs shall be performed faithfully and promptly at all times, when required by said city council by written order from the mayor."

So the city must fail upon either of the alternatives presented. If the contract embraces the provisions which we first quoted, the city has failed to comply with its terms. If that provision be stricken out, and we go back to the specifications, the Paving Company is only required to keep the paving in repairs, and there is no language whatever to support the contention that it was bound to construct a pavement of such material and workmanship that it would not need repairs during the first year.

[3] Again, the contention of the city that the provision contained in the signed contract which we have quoted is void is wholly untenable. That provision is consistent with the specifications. They throughout require the work to be done under the supervision of the city engineer and the improvement committee of the council. The twenty-fifth article of the specifications is as follows:

"It is expressly agreed and understood that if any part of the specification should appear obscure the interpretation of the engineer shall be accepted as final."

It is plain, therefore, that when the provision was inserted in the contract to the effect that the engineer's judgment should be binding as to whether the pavement disclosed defects during the first year, this was a provision which is frequently found in such contracts, and is in harmony with the specifications which had been prepared for the work in Hutchinson. The provision is also clearly for the benefit of the city. It did not deprive the mayor and the city council of power to observe the pavement during the first year after its acceptance, and discover for themselves whether defects had appeared in it. If any such defects were discovered by them, they could require the city engineer to give the notice specified in the contract; and if he refused or failed to do so, it was within their power to remove him, and appoint another engineer in his place. We are satisfied from the evidence that no defects appeared during the first year which challenged the attention either of the mayor or the city council or the city engineer. Those defects, if they ever appeared, appeared long afterwards, and the city is now trying by process of ex post facto reasoning to discover things in the pavement which did not attract the attention of anybody at the time, but which are now thought to have been the original causes of defects which subsequently appeared.

[4] We are also of the opinion that the trial court rightly held that a fair interpretation of the entire contract shows that the obligation of the Paving Company was to so construct the paving that it would be accepted by the city authorities at the conclusion of the work as a

fulfillment of the specifications, and in proof that the pavement was what it purported to be the Paving Company was further bound to maintain it in repair if any defects appeared during the first year. It is impossible to explain the specific requirements of the contract on the subject of repairs upon any other theory. There were also extensive negotiations between the city and the Paving Company providing for an insurance of the paving for a consideration for various terms of three, five and ten years. These negotiations are inconsistent with the city's contention that the pavement was to be of such material and workmanship that no repairs should in any case be necessary during the first year. It must be conceded that the first paragraph of the language above quoted gives color to the city's contention; but that language must be read in connection with all the other provisions of the contract, and when so read we think the obligations of the Paving Company are as we have pointed out.

[5] In· the course of the trial the city asked to amend its reply so as to set up, as a defense against the city engineer's failure to give notice of defects during the first year, that he was corruptly hired by the Paving Company not to do so. The trial court ruled that this defense was equitable, and could not be set up in an action at law. In this the court was clearly wrong. The defense asked for no· equitable relief such as cancellation or reformation. It was purely defensive, and was available in an action at law. It really charged the Paving Company with having fraudulently induced the failure to·give notice upon which it was relying as a defense to the action. When used purely for purposes of defense, and not as a basis of affirmative equitable relief, such as cancellation or reformation, fraud not only 'may be, but in the federal courts must be, availed of in an action at law. Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Cable v. United States Life Insurance Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; Riggs v. Union Life Ins. Co., 129 Fed. 207, 63 C. C. A. 365; Boise Water Co v. Boise City, 213 U. S. 276, 282, 29 Sup. Ct. 426, 53 L. Ed. 796.

[6] We do not think, however, that the decision of the trial court ought to be disturbed. First, the effort to introduce this new matter into the case came in the midst of the trial, at a time when the Paving Company could not have been prepared to meet it. It was a fact, if it existed, which must have been known to the city at all times, and should have been embraced in the pleadings before the trial .commenced. We think, therefore, that the court properly refused to permit the amendment, though it gave a wrong reason for its decision. We are the more willing to reach this conclusion because we are of the opinion that the charge that the city engineer was corrupted is a purely paper defense. The city engineer testified as a witness, and was cross-examined by the city. The matter of his relations to the Paving Company was gone ,into. The utmost that was developed was that the city engineer, in 1908, two years after the pavement had been accepted, wrote a letter in which he spoke in commendatory terms of the paving in Hutchinson, and recommended bitulithic paving to other cities. There is no evidence whatever to show that this was not his

genuine opinion at the time; on the contrary, he testifies positively that it was, and there is no evidence developed from his examination that there were any improper relations between him and the Paving Company.

[7] The offer to amend was in the following language:

"That the city engineer of the city of Hutchinson, T. G. Elbury, in fact had no experience in laying or superintending the laying of bitulithic or any other kind of pavement, which was well known to defendant; that, the said pavement being the first pavement of that kind laid in the city of Hutchinson, the defendant the Kansas Bitulithic Company took advantage of the said engineer's ignorance and incompetence and fraudulently employed him to prepare long statements and testimonials praising and approving bitulithic pavement, and especially the Main street job in Hutchinson now in controversy. And as soon as a portion of said pavement was laid, and before its completion and acceptance, the said statements and testimonials of T. G. Elbury the then city engineer were delivered to the defendant the Kansas Bitulithic Company by him and were circulated by the said defendants through the country in various cities where the said defendant was seeking to promote its pavements. That thereby said city engineer corruptly and fraudulently became the employé and champion of defendant, and by reason thereof, and by reason of his incompetency as an engineer and an arbitrator to determine the quality of the said pavement, the said T. G. Elbury, during more than one year after the acceptance of said pavement, secretly, falsely and fraudulently neglected and refused to make any requirement of said defendant, the Kansas Bitulithic Company, regarding the repair or reconstruction of said pavement. And that said Elbury was city engineer all of said time, and thus secretly and fraudulently became an employé and dupe of said defendant, and was wholly incompetent by reason thereof to act as an arbitrator under the terms of the alleged agreement set forth in the defendants' answer."

We are satisfied that the charge of fraud and corruption contained in this proposed amendment is simply the argumentative conclusion of the pleader from the fact that the city engineer commended the paving, and that there is no evidence, and none could have been produced, to show that the city engineer was corrupted by the Paving Company.

The judgment is therefore affirmed.

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes