TOWN OF TONAWANDA, Plaintiff, *v.* STAPELL, MUMM & BEALS CORPORATION and Others, Defendants.

Supreme Court, Erie County, May 29, 1933.

*O. Clyde Joslin* [*Harold V. Cook* of counsel], for the plaintiff.

*Falk, Phillips, Twelvetrees & Falk* [*Frederick R. Twelvetrees* and *Ira W. Smith* of counsel], for the defendants Stapell, Mumm & Beals Corporation and Fidelity and Deposit Company of Maryland.

*Kimball & Smith* [*Wallace H. Miller* of counsel], for the defendant Frank Pandolfi.

*Elmer C. Miller* and *Herbert Mullenhoff*, for defendant Angelo Castricone.

CHARLES B. WHEELER, Official Referee. This action is brought for damages growing out of an alleged breach of contract for the paving and curbing of certain streets in what is known as the Sheridan Garden district in the town of Tonawanda, Erie county, N. Y.

The town of Tonawanda prepared certain plans and specifications for doing the work described and invited bids.

The Stapell, Mumm & Beals Corporation being the lowest bidder, its bid was accepted, and on the 21st day of July, 1927, entered into a contract with the town for doing the work. By the contract so made, the plans and specifications were made a part of the contract.

The specifications provided for the giving of a bond for the faithful performance of the work, and the Fidelity and Deposit Company of Maryland gave such a bond.

The defendants Castricone and Pondolfi did parts of the work as subcontractors, but the plaintiff makes no claim against them.

The specifications among other things provided:

" 28. The said Contractor, to insure faithful performance of all work in accordance with the plans and specifications, shall, before commencing any work, or placing any materials upon any highway in said district, deliver to the Town Board, a bond executed by a solvent surety corporation as surety, in a sum equal to one-half of the total amount of the contract price, which said bond shall be approved by the Town Board.

" 29. The Contractor, shall complete the work or improvements in a satisfactory and durable manner so as not to require repairs within one year from the date of completion of the contract; the Contractor shall during the said year make all repairs as may be necessary on account of improper or unskillful workmanship or the use of defective or imperfect material, and the contract bond shall remain in effect until the expiration of this one year period."

" 32. Inspectors shall be appointed by the Town Board to supervise the construction of the whole work, and their orders shall be observed by the Contractor, or in the absence of the latter, by his Superintendent. The work shall be executed only in the presence of the inspector during the working hours of the day, unless otherwise directed, but the fact that there is an inspector will not relieve the Contractor from responsibility for any deviation or violation of the specifications.

" 33. During and after the completion of the work, should the Engineer require it for his own perfect satisfaction, the Contractor shall make openings and to such extent, through such part or parts of the work as he shall direct and to his satisfaction. If the work is found to be satisfactory, the Contractor shall be paid for the cost of making such openings through the work. Should the work be found defective or improperly done, such work shall be taken up and relaid or otherwise remedied to the satisfaction of the Engineer, and should the Contractor refuse or neglect for a period of five days to correct such defective work when notified to do so, then the Town Board shall employ the necessary men and provide materials to do the work, and the expense thereof shall be deducted from any moneys due or that may become due the Contractor on account of the contract, or said contract may be terminated by the Town Board for breach of contract."

They further provided: " 34. Whenever unfaithful work or defective material is discovered, it shall at once be replaced, and reconstructed at the expense of the Contractor. No work of any kind must be permanently buried or covered until examined and approved by the Engineer. Upon violation of this condition, the Engineer will not certify to any estimate of work done until the uninspected portion shall have been uncovered, inspected and found to comply with the specifications."

The specifications further provided the town should be represented by inspectors to supervise the work as it progressed, and this was done.

The contract between the town and Stapell, Mumm & Beals Corporation among other things provided: " It is understood and agreed that all the conditions and obligations set forth in said specifications are to have the same force and effect as if set forth especially and at length herein.

" The Contractor further agrees to keep and maintain the pavement hereinbefore referred to, together with its appurtenances in good condition and repair for one year from the date of the completion and acceptance of the same, in accordance with the conditions of the specifications and contract, without expense to the

Town of Tonawanda or the tax payers thereof, or any of them, and to provide the bond of a corporation authorized to guarantee the performance of a contract and to do business in the Town of Tonawanda, County of Erie and State of New York as surety covering the same."

Within a year after the completion of the work, certain of the curbing placed along the streets paved was found to be defective and disintegrating, and the contractor was notified of the fact and required to replace it. There was all told some 3,648 feet of such defective curbing.

The contractor thereupon did replace such defective curbing.

Later on, and after the expiration of one year, more curbing showed deterioration and may be termed defective. In fact the plaintiff contends that practically all the curbing was defective and of poor quality, and so defective that it became necessary to remove it, and replace it with new and other curbing.

The town called on the contractor to make this curbing good. The contractor refused to do this, contending that its obligation under its contract to maintain the curbing was only for one year.

Thereupon the town caused all the curbing not previously replaced by the contractor to be pulled out and new curbing to be put in. It is to recover the cost of this work that this action is brought, and the Fidelity and Deposit Company, as bondsman on the surety bond, is joined with the contractor as party defendant.

The question of law presented involves the interpretation of the contract, and whether the contractor's liability extends beyond the year stated, or survives as to defects developed and discovered after the expiration of the year. If the contractor's duty to maintain is limited to one year after the completion and acceptance of the work, then the plaintiff cannot recover. If, on the other hand, the contractor remained liable for defective work after the expiration of a year, then the plaintiff has made a case for recovery.

It goes without saying that, in construing contracts, the first rule is to ascertain, so far as possible, the intention of the parties to an agreement.

In doing so, resort should be had to the whole agreement. Different clauses should be read together and harmonized, if possible. If they cannot be harmonized, then, we think, particulars should prevail over the general. So, too, we are of the opinion the later writing as a rule should be deemed to express the agreement of the parties. For instance, the written contract in this case was executed after the specifications were prepared, and if the provisions of the specifications and contract cannot be harmonized, then the contract should control.

The referee has studied both the specifications and the contract and is unable to discover any substantial difference between the two.

For instance, by clause 28 of the specifications the contractor to insure the faithful performance of all work is required to furnish a surety bond, and by clause 29 " the contractor shall complete the work or improvement in a satisfactory and durable manner *so as not to require repairs within one year from the date of completion of the contract;* the contractor shall, during said year, make all repairs as may be necessary on account of improper or unskillful workmanship or the use of defective or imperfect material, *and the contract shall remain in effect until the expiration of this one year period.*"

The specifications, to our mind, clearly indicate guaranty of good workmanship and material should continue for one year only after the completion and acceptance of the work, and during that time the contractor, in case defects developed, was to replace and reconstruct defective work.

The contract itself contained provisions to do the very things the specifications required, that is " to keep and maintain the pavement heretofore referred to, together with *its* appurtenances in good condition for *one year* from the date of the completion and acceptance of the same."

So the specifications and contract are in harmony, and we think limit the guaranty of the work to the period of one year.

If, as the plaintiff contends, the contractor became liable for defects which developed or were discovered after the expiration of the year guaranty, then there was no occasion or necessity for incorporating into the specifications or contract the provisions quoted. They added nothing and limited nothing, and became idle words. We cannot think such was the intention of the parties. We construe the contract to limiting the contractor's liability to the term of one year.

Contracts of a somewhat similar character have from time to time been before courts for interpretation and have been held to limit the liability to stated time. (*City of New York* v. *Continental Asphalt Co.,* 163 App. Div. 486; affd., 218 N. Y. 685; *City of Hutchinson* v. *Kansas Bitulithic Co.,* 239 Fed. 659; *Barber Asphalt Paving Co.* v. *Kansas City Hydraulic Press Brick Co.,* 170 Mo. App. 503; *Schropp* v. *Zielda Forsee Investment Co.,* [Mo.] 224 S. W. 424.)

These views make it unnecessary for the referee to discuss certain other questions raised.

The referee reaches the conclusion the plaintiff's complaint must be dismissed.

So ordered.