MILLER v. SCHOOL DISTRICT NO. 3 IN CARBON
COUNTY.

SCHOOL DISTRICTS—ANNUAL AND ADJOURNED MEETING—REFUNDING BONDED INDEBTEDNESS—VOTE UPON PROPOSITION.

1. At an annual school district meeting, legally and regularly called and held, the action taken, upon a matter within the legal province of the meeting, is valid if agreed to by a majority of those present at the meeting.

2. The voters absenting themselves from the election are presumed to assent to the expressed will of the majority voting at an election held in pursuance of law and upon proper notice, and the same rule applies to those who do attend and who do not vote upon the proposition, unless the statute requires a different rule and prescribes that the majority shall be of the electors present, or of those voting at the election.

3. Where a proposition to refund the bonded indebtedness of a school district was duly and regularly submitted to the annual district meeting, and prior notice thereof duly given, and at such annual meeting the proposition was referred to a committee to report at an adjourned meeting, and the proposition was agreed to by the unanimous vote of those present at the adjourned meeting, the vote thereon was sufficient, although 82 were present at the first meeting, and only 34 at the adjourned meeting, and although there were more than 500 legal voters in the district.

4. The refunding of bonded indebtedness is not the creation of a debt, and to such a refunding Sec. 4 of Art. 16 of the constitution with reference to the creation of a debt in excess of the taxes for the current year by any city, town or village, or any subdivision thereof, does not apply.

5. A delay by the board of seventeen months after authorization by the district meeting, to refund the bonded indebtedness of the district, being caused by a financial stringency which prevented the disposal of the refunding bonds upon any terms whatever, will not invalidate the proceedings.

[Decided March 14, 1895.]

RESERVED QUESTIONS from the District Court for Carbon County. HON. JESSE KNIGHT, Judge.

The facts are fully set out in the opinion.

*Craig & Chatterton,* for the plaintiff.

*McMicken & Blydenburgh,* for the defendant, maintained that the vote taken at the adjourned meeting to issue $23,000 of refunding bonds was valid, and the authority continued to issue any less amount that might be necessary, and cited. (18 Am. & Eng. Ency. L., 297; Black v. Trower, 79 Va., 126; Walnut v. Wade, 13 Otto, 683; Hanibal v. Fauntleroy, 15 Otto, 408; Powell v. Madison, 107 Ind., 106; B'd. Comr's. v. Rollins Inv. Co., 3 Wyo., 476; 1 Dillon's Mun.Corp., sec. 277; id. p. 79; State v. Swift, 69 Ind., 531; State v. Binder, 38 Mo., 450; Cooley's Const. Lim., p. 747, n. 1; People v. Warfield, 20 Ill., 159; Walker v. Oswald, 68 Md., 146; Oldknow v. Wainwright, 2 Burr, 1017; Gillespie v. Palmer, 20 Wis., 544; State v. Grace, 20 Or., 154; State v. Echols, 41 Kan., 1; Marion Co. v. Wink-

ley, 29 Kan., 36; Metcalf v. Seattle, 1 Wash., 297; Yesler v.
Seattle, id. 308; R. R. Co. v. County C't., 1 Sneed, 637; Twp.
v. Rodgers, 16 Wall., 644; People v. Garner, 47 Ill., 246;
People v. Wiant, 48 id., 263; Bridgeport v. R. R., 15 Conn.,
475; Talbot v. Bent, 9 B. Mon., 526; State v. Mayor, 37 Mo.,
272; County v. Johnson, 95 U. S., 360; 19 Am. & Eng. Ency.
L., 1090 and cases cited; Sch. Dist. v. West. Tube Co. (Wyo.),
38 Pac., 922.)

GROESBECK, CHIEF JUSTICE.

The following material facts are set forth in the agreed
statement filed in the district court in this cause: Isaac C.
Miller, the plaintiff, is a resident taxpayer and qualified elector
of School District Number Three in Carbon county, a legally
organized school district.   In 1886 the Legislative Assembly
of the then Territory of Wyoming passed an act authorizing
the defendant school district to issue bonds to the amount of
$25,000 for the purpose of building a school house in the dis-
trict, and in accordance with said act, the bonds of the district
were thereafter issued in such sum, bearing interest at the rate
of eight per centum per annum, which are a valid debt against
the district.   The interest accrued thereon and $3,000 of the
principal has been paid, leaving unpaid on the bonds the sum
of $22,000.

Under the authority of an act of the Second State Legis-
lature, permitting the school districts of the State to refund
their bonded indebtedness, notice was given according to law
of the regular annual school district meeting to be held on
Monday, May first, 1893, in which, among other things, it was
stated that the annual school meeting would determine by
ballot whether the bonded indebtedness of the district should
be refunded in accordance with said act (Chapter 10, Sess.
Laws 1893), and in this respect, the clerk of the school district
followed the direction of a special meeting of the board of
trustees held April 18, 1893.

At the annual school district meeting, held pursuant to such
notice, and under the provisions of the statute, on the first
Monday of May, 1893, being the first day of that month, the
matter of refunding the bonds of the school district was by

resolution referred to a committee to report upon at a subsequent time to which the annual meeting was adjourned. At the annual meeting 82 votes were cast at the election of trustee, and at the adjourned annual meeting, held May 10, 1893, the committee reported in favor of the refunding proposition, and thereupon a resolution was passed authorizing the board of directors of the district to issue and sell the refunding bonds of the district in the sum of $23,000, then outstanding, in accordance with the act, the bonds issued to be known as the 15-30 bonds, and to be sold at the lowest possible rate of interest. A ballot was taken on this resolution, and it was adopted by the unanimous vote of the 34 electors present.

After these proceedings, the district board corresponded with various parties dealing in bonds, relative to placing the refunding bonds, and they were advised that, owing to the financial stringency then prevailing, it would be impossible to sell or dispose of the bonds, and for this reason the district board took no further steps toward selling the bonds, until October, 1894, when a notice offering for sale the refunding bonds was published pursuant to the statute. The bids tendered under this offer were opened on the 30th day of November, 1894, and the bid of Mason, Lewis and Company, of Chicago, being the lowest and best bid, was accepted, the amount of the indebtedness, $22,000, to be issued in bonds to be dated January 1, 1895, to bear interest at the rate of six per centum per annum, the price offered being $22,669, or $669 in excess of the face of the bonds, and the bonds were to run, as advertised, for thirty years, to be redeemable at the pleasure of the district after fifteen years from their date. The amount of the bonds of said school district at the time of the admission of the State into the Union, July 10, 1890, was less than four per centum of the assessed valuation of the taxable property of the school district. At the annual charter election, held in the city of Rawlins, which lies wholly within the limits of the school district, held on the second Tuesday of April preceding the annual school district meeting, more than five hundred votes were cast. The agreed statement of facts closes with the statement that the board of trustees or directors of the school

district is threatening to carry out its agreement by issuing the bonds of the district to the bidders whose bids were accepted, and will do so unless restrained from so doing, and an injunction is prayed for against the board of directors of the school district.

The plaintiff claims under the agreed facts that the board of directors or trustees of the district has no authority to issue the refunding bonds as contemplated, (1) because the qualified electors have not authorized the same as required by law, and the vote of 34 in favor of the issuing of the bonds at the adjourned annual meeting, it is alleged, was not a majority of the qualified electors of the district, nor even a majority of the meeting, as it was an adjourned session of the same meeting at which 82 votes were cast; (2) because the debt which is thus to be created is not in conformity with section 4 of article 16 of the constitution of the State, as the proposition to create such debt had not been submitted to a vote of the "people" of said school district; (3) because the vote taken May 10, 1893, if legal at that time, was not for the issue of $22,000, but for $23,000 of refunding bonds, and the latter proposition has never been submitted to the electors of the district; and (4) the time of the vote is too remote from the time of the issuance of the proposed bonds. The defendant claims that the proposed issue of the refunding bonds is legal in all respects, and all the necessary preliminaries have been fully complied with according to law.

Upon the agreed statement of facts, substantially as recited, the district court for Carbon county found that an important and difficult question arose in the case, and a number of questions were by that court submitted to us for decision. They will now be considered in detail.

1. Was the vote had at the adjourned meeting on May 10, 1893, sufficient to authorize the issuance of these bonds by the school district?

Ans. Yes. The language of the act (sec. 1, Ch. 10, Laws 1893) is: "The Board of Directors of each and every school district in the State of Wyoming, are hereby authorized to issue refunding bonds of such school district, for the purpose of

taking up outstanding bonds of such school district, for any sum not exceeding the amount of outstanding bonds; provided, that the qualified electors of any such school district shall so elect and determine at any regular meeting or at any special meeting held for such purpose." There is no dispute over the sufficiency of the notice given of the annual meeting, and in the absence of any statute providing a different rule, the electors present of a school district are competent to act by the vote of a majority of the meeting, which would be a quorum. The common law principle is that if an act is done by an indefinite body it is valid if passed by a majority of those present at a legal meeting, no matter how small a portion of the whole number entitled to be present they may constitute, and this has been deemed applicable to the town meetings in New England, which is a near approach to pure democracy. The corporate power in the New England towns resides in the inhabitants or citizens at large, and these form the constituent body. If the meeting has been duly warned or called, those who assemble, though less than a majority of the whole, have the power to act for and bind the whole, unless it is otherwise provided by law, and those who are absent are justly and conclusively presumed to assent fully to the action of those who attend. Dillon on Mun. Corp., 4th Ed., Sec. 277, and cases there cited. The authorities seem to be uniform on this point, as there is a distinction between a corporate act to be done by a definite number of persons and one to be performed by an indefinite number. In the former case a majority is necessary to constitue a quorum, and no act can be done unless a majority be present, and in the latter a majority of any number of those appearing may act. Angell & Ames on Corporations, 11th Ed., Sec. 501. The voters absenting themselves from the election are presumed to assent to the expressed will of the majority voting at an election held in pursuance of law and upon proper notice, and so with those who do attend and who do not vote upon the proposition, unless the statute requires a different rule and prescribes that the majority shall be of the electors present, or of those voting at the election. State v. Swift, 69 Ind., 531, 542; State v. Binder, 38 Mo., 450;

People v. Clute, 50 N. Y., 451; Smith v. Proctor, 130 N. Y., 319. The last case cited gives the rule of the common law as declared by Lords Mansfield and Denman, to be that "whenever electors are present and do not vote at all, they virtually acquiesce in the election made by those who do" (Oldknow v. Wainwright, 2 Burr., 1017), and that a vote by a majority of a meeting means "a majority of those who choose to take a part in the proceedings of the assembly" (Gosling v. Veley, 7 Q. B., 406), and the Supreme Court of the United States says "all qualified electors who absent themselves from an election duly called are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares." Cass County v. Johnson, 95 U. S., 360. See 1 Sneed, 637; People v. Warfield, 20 Ill., 159; People v. Wiant, 48 Id., 263. . In the case at bar, it appears that all of the electors present at the adjourned annual meeting of the school district voted in favor of the issuing of the refunding bonds, although their number was not a majority of the 82 votes cast at the annual meeting, nor of the 500 or more votes cast at the charter election held in the City of Rawlins, which lies wholly within the limits of the school district, within the month preceding. The annual meeting of the school district had under our statute the power "to adjourn from time to time as occasion shall require" (Rev. Stat., sec. 3927), and it seems that this power of adjournment would be inherent in the assembly of the electors of the district to secure full information on any subject to be voted upon, and even for the sake of the convenience of the electors of the district. As the meeting was properly and legally called under the notice prescribed by the statute, and in this notice was inserted the proposition of refunding the bonds, under the express direction of a previous special meting of the district board, it seems that more than ordinary care was used in notifying the electors of the district that the proposition would be voted upon. The appointment of a committee to report on the proposition, and the adjournment to a subsequent day to afford them sufficient time to report, shows clearly that the matter submitted was carefully considered.

Undoubtedly full notice of the submission of the proposition was given, and the entire proceedings were conducted with a commendable caution. The electors present at the adjourned annual meeting had full power to transact the business of the district entrusted to their care by the statute, and they had the right to act and bind the district by the action of a majority without regard to their numerical strength, and those who remained away are to be presumed as assenting to their action.

2. Does the word "people," as used in section 4 of Art. 16 of the Constitution of the State, mean the same as the words "qualified electors" used in the act of February 10th, 1893, and is this section of the Constitution applicable to said act?

Ans. The section of the Constitution referred to is as follows: "No debt in excess of the taxes of the current year shall, in any manner, be created by any county or subdivision thereof, or any city, town or village, or any subdivision thereof in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

It is unnecessary to consider this question, or to determine whether a school district is a "subdivision of a county" or not. The refunding of the bonded indebtedness of the district is in no sense the creation of a debt, for the debt already existed in another form, that of bonds issued under express legislative sanction, before there was any congressional restriction and expressly excepted from the provisions of the act of Congress restricting the amount of indebtedness incurred by any quasi corporation in the territories, the original issue of bonds having been under the territorial regime. Sch. Dist. v. Western Tube Co. (Wyo.), 38 Pac., 922; See Commissioners v. Rollins Investment Co., 3 Wyo., 470; Powell v. Madison, 107 Ind., 106. The section of the Constitution invoked has no application to the case at bar.

3. How many votes of qualified electors are required to authorize the issue of refunding bonds under said law? Is a majority of those present and voting sufficient?

Ans. Yes. This question is sufficiently answered in the answer to the first question.

4. The meeting of May 10th (1893) being an adjourned session of the meeting of May 1st, and 82 votes being cast at said meeting of May 1st, was 34 votes of May 10th a majority of the electors present at said meeting and a sufficient number of votes to authorize the issue of the bonds?

Ans. The answer to this question is also comprehended in the answer to the first question.

5. If the action taken on May 10th, 1893, was then sufficient to authorize the issue of $22,000.00 (of bonds) on January 1st, 1895, the debt of the district having been reduced $1,000, and the vote of May 10th, 1893, authorizing the issue of $23,000.00 (was legal), or (?) should not the authority conferred, if any was conferred, by the election of May 10th, '93, have been promptly acted upon and carried out, or does it continue an indefinite time if not distinctly rescinded?

Ans. The question is not presented in an intelligible form. So far as we can aid the meaning by supplying omitted words, it will be answered. The bonds voted for the purpose of refunding outstanding bonds amounted to the sum of $23,000.00, and this amount was subsequently reduced by the payment of bonds by $1,000, but this reduction in the amount of the original indebtedness was probably for the benefit of the district or in accordance with law. This would be the presumption in the absence of any showing to the contrary. The reason of the delay of some seventeen months, including the time necessarily employed in advertising for proposals for purchasing the refunding bonds, is explained in the agreed statement of facts, and was owing to the financial stringency then prevailing during the period elapsing between the vote in favor of the refunding proposition and the time the bids were accepted, which prevented the disposal of the bonds upon any terms whatever.

This delay would seem to be prudent on the part of the district board, and does not seem too remote from the time of the vote in favor of the refunding of the bonds. It would be a harsh rule to establish that such a necessary delay, purely

for the advantage of the school district, should invalidate all the proceedings taken to refund the debt of the district, apparently most advantageous to it, backed by a unanimous vote of the electors of the district, voting on the proposition.

6. Do the words "or other subdivision thereof," occurring in the proviso in sec. 3, Art. 16, of the Constitution, embrace a school district?

Ans. The proviso contains a permission extended to the several counties, cities, towns, villages, "or other subdivision thereof," to bond its public debt existing at the time of the adoption of the Constitution, in any sum not exceeding four per centum on the assessed value of the taxable property in such county, city, town, village, "or other subdivision," as shown by the last general assessment for taxation. The agreed facts state that at the time of the admission of the State into the Union, the amount of school bonds outstanding was less than four per centum of the assessed valuation of the district, as shown by the assessment list for county and territorial purposes for the year A. D. 1889. The original bonds of the district were issued under legislative authority in 1886 before there were any congressional or State restrictions as to incurring indebtedness, and it was neither the intention of the act of Congress nor of the State Constitution to impair this pre-existing contract. The Congressional legislation expressly excepted the bonds issued prior to its enactment, as these original bonds were, and neither the State Constitution nor any act of the legislature could operate to invalidate the issue of these original bonds. The question proposed is an abstract one and is unnecessary to decide in the disposition of the case.

Under the agreed facts, the injunction prayed for against the issuing of the bonds should be denied, and we so advise the district court for Carbon County.

CONAWAY and POTTER, JJ., concur.