2 So.2d 605

**FULLER v. KNIGHT et al.**

6 Div. 862.

Supreme Court of Alabama.

May 22, 1941.

258

Asa B. Fuller, of Cullman, for appellant.

St. John & St. John, of Cullman, for appellees.

THOMAS, Justice.

The appeal is to review the action of the lower court in rendering a declaratory judgment upon the agreed statement of facts as set out in the pleadings aided by exhibits made a part thereof.

During the year 1913, an election was duly called and held in Cullman County to vote upon the proposition of whether or not the voters of said county favored the issuance of bonds of said county to the amount of $200,000, bearing interest at not exceeding the rate of five per cent per annum, payable semiannually, to run for thirty years, for the purpose of constructing public roads in said county. At said election a majority of the voters of said county voted in favor of the issuance of said bonds in said amount, and thereafter, acting upon said authority, the county duly executed $160,000 principal amount of bonds so authorized, which bonds so issued were dated July 1, 1913, to mature July 1, 1943. In the proceedings of the governing body of the county under which the bonds were issued, it was recited that the remaining $40,000 of bonds authorized at said election would be subsequently issued for the same purpose, if the public good required such action, when the indebtedness of the county should be reduced so that the same might be issued within the constitutional debt limit of the county, at such time as the governing body of the county might deem it proper to issue the same. Said remaining $40,000 of bonds so authorized have never been issued by the county until the present time. On April 14, 1941, at a regular meeting of the Board of Revenue of Cullman County, a resolution was adopted authorizing the issuance of said additional $40,000 principal amount of bonds so authorized at said election, and finding that a public need for the issuance of said bonds existed for the purpose as originally authorized and that the indebtedness of the county had been reduced to an amount that the issuance of said bonds is within the constitutional debt limit of said county. This bill was filed by the appellant as a taxpayer, resident and citizen of Cullman County, for a declaratory judgment. After a hearing on pleadings and proof, the lower court rendered a decree in favor of the respondents and cross-complainants, upholding the validity of said bonds, and the issuance and sale thereof, and from which decree this appeal is prosecuted.

The question for decision is, since Cullman County issued $160,000 of the $200,000 principal amount of road improvement bonds, duly authorized by the people to be issued as of March 17, 1913, can the remaining $40,000 of said original authorized bond issue now be issued and sold for the same purpose, time and tenor, after the lapse of twenty years?

Appellee thus states the question. There is no inhibition of the constitution or statutes of this state that will prevent the issuance and sale of said bonds, or from applying the proceeds as prescribed by law under the decision of Stokes v. City of Montgomery, 203 Ala. 307, 82 So. 663; and that the "twenty year rule of repose" is not applicable to the action of public bodies in matters involving the issuance of bonds where a valid authorization is given by the people. In the Stokes case, supra, the facts and holding are succinctly stated in the headnotes, as follows:

"The city of Montgomery in 1908 had ample authority to aid, establish, set up, and regulate hospitals for the city, and to issue and sell bonds for such purposes, an election having been held in which the establishment of a hospital and the issuance of bonds for such purposes was voted for, under Acts 1907, p. 865, § 143 (Code 1907, § 1277) Gen.Acts 1903, p. 59 (Code 1907, § 1421).

"Where, in an election in 1908, it was voted in the city of Montgomery that the council be authorized to issue bonds to establish a hospital, there was nothing to prevent the issuance of the bonds in 1919, and the establishment of the hospital, notwithstanding that the form of government was changed in 1911 and is now governed by a board of three commissioners * * *.

"Gen.Laws 1919, p. 57, limiting the time for attacking validity of elections held by a municipality for the purpose of issuing bonds or levying taxes, is remedial and retroactive, and applies to the election of December 14, 1908, in the city of Montgomery, in which it was voted to authorize the city to issue bonds to establish a hospital, and it was proper to issue such bonds in 1919."

We find no case in the books where twenty years or more had elapsed between the authorization of the original issue or an installment thereof, such as is now proposed.

The object and purpose of the bond issue now proposed is for the same purpose as originally authorized. The bonds as proposed are of like tenor, except as to a reduction of the interest rate, and the consummation date is within the original thirty-year period, duly authorized by the electors of Cullman County.

The decision in Stokes v. City of Montgomery, 203 Ala. 307, 82 So. 663, has not been questioned or qualified, but was cited with approval in Johnson v. City of Sheffield et al., 236 Ala. 411, 183 So. 265, and Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8.

In 25 A.L.R. 613, the case of Stokes v. City of Montgomery, supra, is cited, to the effect that it appeared that "a statute in force in 1908 expressly authorized a city to issue and sell bonds for the building of a hospital. A city election in that year was called and held in conformity with the statute; and a majority of the votes were cast in favor of issuing bonds for a hospital. In 1909 the statute was replaced by one providing for the construction of public buildings by a city. The bonds for the hospital were not issued until the year 1919, when the city council provided for the issue and sale of the bonds. It was held that neither the change in the statute, nor the lapse of time between the election and the provision of the council for the issue and sale of the bonds, was a ground for enjoining the proposed issue and sale."

Counsel for appellant cite many authorities to the effect that because of the lapse of twenty years between the authorization for and issuance of the bonds, the authority contained in the election is not effective. We will now examine the important cases cited to this effect.

In Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820, the action was by decedent's first wife to set aside a divorce decree obtained by her husband more than twenty years before, and it was held that the rule of prescription (20-year period) was not avoided because complainant had been insane. The case of Wilson v. Holt, 83 Ala. 528, 3 So. 321, 3 Am.St.Rep. 768, also touched rights under a divorce.

In Scott v. Scott, 202 Ala. 244, 80 So. 82, the rule of prescription was applied to all claims or rights of property which had been permitted to slumber without assertion or recognition for twenty years, and the same rule was applied in Kidd et al. v. Browne, 200 Ala. 299, 76 So. 65, as affecting property rights. So of Matthews v. McDade, 72 Ala. 377; Bozeman v. Bozeman, 82 Ala. 389, 2 So. 732; Kidd et al. v. Borum, 181 Ala. 144, 61 So. 100, Ann.Cas.1915C, 1226. In Knabe v. Burden, 88 Ala. 436, 7 So. 92, it was held that where a patent by the state is issued to a sixteenth section of land more than 20 years previous, prescription will be indulged that the tract had been duly selected and set up by the officer and designated for that purpose in the act under which the patent was issued.

In Semple v. Glenn, 91 Ala. 245, 6 So. 46, 9 So. 265, 24 Am.St.Rep. 894, it was held that where a call had not been made for 20 years on stockholders for the payment of their subscriptions to stock in a corporation, presumption of payment would arise.

It will be observed from the foregoing authorities that the question here presented has not been dealt with. That touching the selection and setting apart of sixteenth section land tended to support the view of appellee as touching the action of state authorities for lands held in trust by the state under a grant from the Federal Government.

In City of Demopolis v. Webb, 87 Ala. 659, 6 So. 408, the bill was in equity by a municipal corporation for injunction against obstruction of streets and river landings that had long prevailed, and the injunction was filed more than 20 years after the adoption of the plan and map of the city, and the same was abated.

The rule of repose or prescription is a bar, not to the exercise of the right or power, but is the public policy that intervenes and prevents the enforcement of that right or power.

The right of counties and municipalities to maintain highways and to bring actions to remove unnecessary obstructions from highways or streets, regardless of the time the nuisance may have been imposed, is recognized by authorities. In 65 A.L.R. 704, it is said:

"'It does not seem a forced inference from such express powers given to a corporation to hold that, by necessary implication, they also possess the right, on behalf of the municipality to come into the commonwealth's courts for relief and protection when an encroachment of a public street is committed or threatened, which it is beyond their expressly granted powers to vindicate or arrest. Such a right apparently flows from the very end and object of the creation of the corporation.' Moyamensing Com'rs v. Long (Pa.) supra [1 Pars.Sel. Eq.Cas. 143]. And to the same effect see Demopolis v. Webb (1889) 87 Ala. 659, 6 So. 408, in which the court said: 'It is

peculiarly appropriate, in our judgment, that this jurisdiction should be asserted in this age and country at the suit of towns and cities, as it harmonizes with the modern American theory of remitting the governmental management of local affairs, as far as convenient and practicable, to the local authorities; for, as said by a learned judge, "the law is made for the time and will be made or modified by them." '

"It should be observed, however, that these cases do not hold that the action must be brought by the municipality, to the exclusion of the state, but only that the action may be brought by the municipality."

This line of decisions, however, is followed in this state, regardless of time. Hamilton v. Warrior, 215 Ala. 670, 112 So. 136; City of Mobile v. Chapman, 202 Ala. 194, 79 So. 566; Chichester v. Kroman, 221 Ala. 203, 128 So. 166; Scheuer v. Britt, 218 Ala. 270, 118 So. 658. The foregoing authorities are by way of analogy as to actions by the state, county or municipality in clearing streets or roads of nuisances, regardless of the time in which the obstruction has been maintained.

In this connection, we may observe that it is a matter of public notice that the child labor amendment proposed by Congress was acted upon by the several states in such time as it was found convenient to the several legislators.

In Coleman v. Miller, 307 U.S. 433, 451, 59 S.Ct. 972, 981, 83 L.Ed. 1385, 122 A.L. R. 695, opinion by Mr. Chief Justice Hughes, the following observation was made:

"The more serious question is whether the proposal by the Congress of the amendment had lost its vitality through lapse of time and hence it could not be ratified by the Kansas legislature in 1937. The argument of petitioners stresses the fact that nearly thirteen years elapsed between the proposal in 1924 and the ratification in question. * * *

"We have held that the Congress in proposing an amendment may fix a reasonable time for ratification. Dillon v. Gloss, 256 U.S. 368, 41 S.Ct. 510, 65 L.Ed. 994. There we sustained the action of the Congress in providing in the proposed Eighteenth Amendment that it should be inoperative unless ratified within seven years. No limitation of time for ratification is provided in the instant case either in the proposed amendment or in the resolution of submission. * * *

"It is true that in Dillon v. Gloss, supra, the Court said that nothing was found in Article V which suggested that an amendment once proposed was to be open to ratification for all time, or that ratification in some States might be separated from that in others by many years and yet be effective; that there was a strong suggestion to the contrary in that proposal and ratification were but succeeding steps in a single endeavor; that as amendments were deemed to be prompted by necessity, they should be considered and disposed of presently; and that there is a fair implication that ratification must be sufficiently contemporaneous in the required number of States to reflect the will of the people in all sections at relatively the same period; and hence that ratification must be within some reasonable time after the proposal. * * * But it does not follow that, whenever Congress has not exercised that power, the Court should take upon itself the responsibility of deciding what constitutes a reasonable time and determine accordingly the validity of ratifications. * * *"

In this case a constitutional question was presented and held to be a political question and the courts did not decide as to what was a reasonable time within which the several state legislatures must act on the amendment.

It may be that the foregoing decisions of the Supreme Court of the United States would shed some light upon the question of a reasonable time, which is the question presented in the case at bar.

In 44 Corpus Juris, § 4167, p. 1194, it is said: "* * * Where the issuance of municipal bonds is authorized only when the proposition has been submitted to, and approved by the voters of the municipality, the holding of an election (Coleman v. Eutaw, 157 Ala. 327, 47 So. 703), conducted as prescribed by statute, and the assent of the number of voters required thereby, are necessary to the validity of the bonds. * * *" [Parenthesis supplied.]

The subject is further touched in 44 Corpus Juris, § 4181, p. 1207, as follows: "* * * where, in pursuance of constitutional, statutory, or charter requirement, a proposition to issue municipal bonds or stock has been submitted to, and acted upon favorably by, the voters of the municipality, the bonds or stock may (Stokes v. Mont-

gomery, 203 Ala. 307, 82 So. 663) and must be issued in conformity to the terms and conditions of the submission and the applicable statute in force at the time thereof, * * *." [Parenthesis supplied.]

The illuminating notes to the above text are, in part, as follows: "In the absence of a statute requiring the bonds to be issued within a specified period of time after the election, the time of issuance rests within the sound discretion of the city officials. Stokes v. Montgomery, 203 Ala. 307, 82 So. 633. (2) Even where a statute provides that the bonds shall be issued within a certain number of days after an election authorizing the issue, valid bonds may be issued after the time specified. Chickaming Tp. v. Carpenter, 106 U.S. 663, 1 S.Ct. 620, 27 L.Ed. 307. (3) It is sufficient if, after the election has been held and the indebtedness authorized, the municipality proceeds to sell the bonds with reasonable diligence. Carlson v. Helena, 39 Mont. 82, 102 P. 39, 17 Ann.Cas. 1233. (4) The authority conferred does not lapse upon the completion of the assessment roll for the year in which the election is held. Carlson v. Helena, supra. (5) The issuance of bonds for constructing a filtration plant and improving a city's waterworks system four years after they were voted did not constitute such unreasonable delay as to affect the validity of the bonds, where the same necessity for improving the waterworks system existed, and the delay was due to the desire of the city to make the improvements at lower prices than those prevailing, as well as to its inability to market the bonds to advantage. Nall v. Elizabethtown, 200 Ky. 321, 254 S.W. 893."

In City of Houston v. McCraw, 131 Tex. 127, 113 S.W.2d 1215, the Texas court made the observation that in regard to bonds authorized for a specific purpose, the city has the right to issue at one time, in one issue, such authorized bonds, or the city can issue at different times and in different issues the bonds within the amount so authorized. However, the court held that the whole must not exceed the original amount authorized, and that the rule which obtains leads to the conclusion that each issue of bonds shall be payable within the time indicated for the particular issue. In the instant case, the $160,000 issue and the $40,000 issue, now proposed, are payable within the same period, and which period was authorized by the election held in 1913.

In Covington v. McInnis et al., Trustees, 144 S.C. 391, 142 S.E. 650, it is said that this court has recognized the validity of bonds issued many years after the election. The voters declared the willingness to have the school district issue of bonds. "At the time of the election on account of the 8 per cent. limitation of the Constitution the full amount of these bonds could not be issued, but this disability having been removed and in the opinion of the trustees it is necessary for the school district to come into funds to be used for the purposes for which the election was held, there can be no valid objection to the bonds being issued for that purpose. This court has recognized in the case of Robinson v. Askew et al., 129 S.C. 188, 123 S.E. 822, that bonds can be issued many years after the election authorizing it; in that case the issue being sold 'four years after the election. This has been recognized in other jurisdictions. Miller v. Carbon County School District No. 3, 5 Wyo. 217, 39 P. 879; Sutherland v. Board of Education, 209 Ky. 351, 272 S. W. 887. * * *"

In Moller et al. v. City of Galveston et al., 23 Tex.Civ.App. 693, 57 S.W. 1116, the Chief Justice for the court held that municipal bonds are not rendered invalid by the fact that they are not issued until nearly two years after the passage of the ordinance providing for them, nor by the fact that as authorized by the ordinance they are antedated.

In Stokes v. City of Montgomery, 203 Ala. 307, 82 So. 663, 667, it is stated that there is no inhibition in the constitution, the statute or ordinances that would prevent the board of city commissioners from issuing and selling said bonds or from applying the proceeds as prescribed by law unless the time elapsing between the authorization for the issue by the election and the proposed issue and sale of the bonds has affected the right of the city in the premises. It is further held in the Stokes case, supra, that:

"No statute or ordinance has been passed since authorization by election of the bond issue negativing the right or power of the city to issue the same. * * * We are of opinion that the bonds in question may be issued and sold at this time, that the proceeds of such sale may be expended for the specific purpose authorized by the people and in accordance with the declared judgment of the board of commissioners. The exercise of this power by the board of

city commissioners and the necessity and expediency for the erection and equipment of a city hospital were given solemn expression by the board of commissioners of the city of Montgomery in the aforesaid ordinance of May 7, 1919.

"We have sought diligently and found no authority to the contrary. In McQuillin on Municipal Corporations, vol. 5, § 2297, p. 4847, the author says:

" 'No rule can be laid down as to within what time bonds must be issued after they have been voted for or their issuance directed by the council (Chickaming Tp. v. Carpenter, 106 U.S. 663, 1 S.Ct. 620, 27 L.Ed. 307) ; but it has been held that the fact that bonds are not issued until nearly two years after the ordinance making provision for their payment is immaterial.'

"The case of Chickaming v. Carpenter, supra, 106 U.S. 667, 1 S.Ct. 623 (27 L.Ed. 307), supports Mr. McQuillin's text. Mr. Chief Justice Waite said:

" 'We see nothing in the statutes which takes away from the township authorities the right to execute and deliver bonds, if for any reason it is not done within the time named.' * * *

"There was, or is, no statute requiring that said authorized bonds be issued and sold within a designated time. The necessity for the city hospital and the time of issue and sale of the bonds and the erection of the hospital were left to the sound discretion of the city officials, and we cannot say that this discretion has not been reasonably exercised. By the delay they have imposed no burdens on the people by interest charges in the meantime, and it is presumed that they have proceeded to give the necessary hospital facilities at a time when most needed by the municipality and its residents."

The people of Cullman County authorized the issue in the first instance, which included the $40,000 now proposed to be issued, and this amount was for the same purpose, and it was left to the sound discretion of the governing body of that county at the time of the election and issue of the $160,000, to issue $200,000 principal amount of bonds. However, at the time of the issue of the $160,000 the constitutional limit on indebtedness prevented the issue of the last $40,000. Since that time, however, and since the issuance of the $160,000 principal amount of bonds, the indebtedness of the county has been so reduced as that

the issue of $40,000 now proposed will be well within the limits of the constitution. The need of the county in road building progress is such that a public need has been found to exist by the present governing body of the county acting within their rights and under the authority and mandate of the people to issue the $200,000 principal amount of bonds in the election of 1913, if the time that has elapsed, and conditions that have changed, will not forbid.

The record shows that the original resolution of the board was dated Feb. 11, 1913, that an election was called and held in the several precincts of the county on March 17, 1913, and deciding that the bonds of said county to the amount of $200,000, in denominations of $1,000 each, to run for thirty years at the rate of interest not to exceed five percent per annum, payable semiannually, should be issued for the purpose of constructing public roads in said county. The recent resolution of April 14, 1941, of the Board of Revenue of Cullman County recites the former resolution (to which we have adverted), declaring that the additional $40,000 of principal amount of bonds authorized at said election have never been issued by the county, that the present indebtedness of the county is such that the same may be issued within the constitutional debt limit of the county, and that "In the opinion of the board it will be necessary to construct additional public roads in the county, for which purpose the county does not have moneys presently available, and therefore in the opinion of the board the public good requires that there now be issued said additional $40,000.00 principal amount of bonds so authorized at said election and which have not heretofore been issued, and the board does therefore deem it proper to issue the same."

The record further shows that "pursuant to authority so to do granted at the said election held in the county on March 17, 1913, there shall be forthwith issued Road Bonds (which are herein referred to as 'the bonds') of the county in the aggregate principal amount of $40,000, consisting of forty coupon bonds numbered consecutively from 161 to 200, inclusive, in the denomination of $1,000 each, to be dated July 1, 1913, and to mature on July 1, 1943. The bonds shall bear interest from January 1, 1941, at such rate as may be hereafter fixed by resolution and order of the board, but not exceeding the rate of 4% per annum,

264

which interest shall be payable semi-annually on July 1 and January 1 of each year until the maturity of the bonds as shall be evidenced by separate interest coupons (which are herein referred to as 'the coupons') attached to the bonds."

 It will be noted that the denomination of the bonds and the maturity date thereof are the same as that required of and contained in the original issue of $160,000 county bonds for the same purpose; that the only difference is the rate of interest that may not exceed the rate of interest in the former bonds, which was "not to exceed five per cent per annum," and under the present resolution for the issue of the $40,000, the rate of interest is fixed by the resolution and order of the board "not to exceed the rate of four per cent per annum." It is thus apparent that no objection to the issue of the bonds can be found in the fact that the rate of interest is required to be reduced under this subsequent issue now sought.

If time and changed conditions have not intervened to prevent the proposed bond issue, subsequent legislation touching county bonds and placing limits upon the maturities of municipal bonds, Acts of Alabama of 1935, p. 575, Code 1940, Tit. 37, § 254 et seq., would have no application, for the reason stated in brief of appellees, namely, that the "Bond Code was expressly given no application on bonds authorized prior to the passage of said act."

After reviewing the authorities and considering the question before us in all its bearings, we are of the opinion that, the Bond Act of 1913 for Cullman County contemplated the issuance of bonds for the construction and improvement of the public roads of the county, a project to be accomplished as a continuous undertaking within a reasonable time for the benefit of the people of the county who ratified the issue of bonds at an election. Twenty-seven years have intervened. The electorate of the county has largely changed; an entire change of set up for highway construction, including State and Federal aid, has intervened. The fund from the proposed issue of $40,000 cannot now be used for the road improvement contemplated when they were authorized by vote of the people.

In this regard, the case differs from the Stokes case, supra, and the bonds proposed are in reality three-year bonds, rather than thirty-year bonds. This emphasizes the intention to issue bonds for concurrent purposes, within such reasonable time as required to make contemplated improvements in the public roads for the benefit of the people voting the issue.

We lay down no hard and fast rule on the question of time limit for such issues. We base our conclusion on the reasonable intendments in the case at hand. We hold that on the alleged authority exhibited in the pleading, the "additional $40,000 principal amount of bonds" cannot be legally issued.

It results that the decree of the circuit court is reversed and one here rendered denying the county the authority to issue and sell the bonds in question.

Reversed and rendered.

GARDNER, C. J., and BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.