Petition of the **CITY OF ST. LOUIS**, a Municipal Corporation, for a Pro Forma Decree Authorizing the issuance of $4,207,000 of Bonds Pursuant to Ordinance No. 50678, Approved November 22, 1961, being the Remainder of $7,957,000 of Bonds Authorized Under and Pursuant to Proposition No. 5 at an Election Held on the First Day of August, 1944, Pursuant to Ordinance No. 42,952, Approved June 17, 1944, City of St. Louis, Petitioner-Respondent,

**P. F. Palumbo, Appellant-Intervenor.**

No. 49539.

Supreme Court of Missouri,

En Banc.

Jan. 14, 1963.

P. F. Palumbo, St. Louis, pro se.

Thomas J. Neenan, City Counselor, Thomas F. McGuire, Associate City Counselor, Stephen M. Hereford, Asst. City Counselor, St. Louis, for respondent.

DALTON, Judge.

This is an appeal by intervenor, P. F. Palumbo, from the judgment and decree of

the Circuit Court of the City of St. Louis holding that unissued bonds of the City of St. Louis, in the sum of $4,207,000 are valid and legal obligations of the City of St. Louis, and authorizing and validating the issuance of said bonds by the said city.

The record shows that, on June 17, 1944, the Board of Aldermen of the City of St. Louis enacted Ordinance No. 42952, submitting to the voters of the City of St. Louis, eleven propositions for the incurring of indebtedness and the issuance of bonds of said city, among which was Proposition No. 5, authorizing the City of St. Louis to borrow money and to issue its bonds in the sum of $7,957,000 for the purpose of constructing, reconstructing, repairing, replacing, reconditioning and improving sewers and drains and the acquiring of rights of way and land therefor. The voters of said city approved said Proposition No. 5 on August 1, 1944. Appellant-intervenor admits that subsequent to the adoption of Proposition No. 5 the respondent city proceeded in an orderly manner to plan, construct and reconstruct sewer facilities in said city.

During the time prior to the adoption by the voters of the City of St. Louis and St. Louis County of the Plan of the Metropolitan St. Louis Sewer District, $3,750,000 of said bonds, as authorized by the adoption of Ordinance No. 42952, were offered for sale. The mentioned Plan went into effect on July 1, 1954. A judgment of ouster of the mentioned District was denied by this court on January 10, 1955. See State on Inf. Dalton v. Metropolitan St. Louis Sewer District, 365 Mo. 1, 275 S.W.2d 225.

The Plan for the Metropolitan St. Louis Sewer District was adopted pursuant to the provisions of Sec. 30(a) of Article VI of the Constitution of Missouri 1945, V.A.M.S., which provided that: "The people of the city of St. Louis and the people of the county of St. Louis shall have power * * to establish a metropolitan district or districts for the functional administration of services common to the area included therein." Sec. 30(b) of the same article also provides that a plan so adopted "shall become the organic law of the territory therein defined, and shall take the place of and supersede all laws, charter provisions and ordinances inconsistent therewith relating to said territory."

On November 22, 1961, Ordinance No. 50678 of the City of St. Louis was enacted. It directed the Mayor and Comptroller of the City of St. Louis, to offer the unissued bonds theretofore approved on August 1, 1944, in the amount of $4,207,000 for sale, and sealed bids to be received at the Office of the Mayor in the City Hall in said city until the hour of 10 a. m., central daylight saving time on Monday, the 28th of May, 1962.

On April 16, 1962, the City of St. Louis filed its petition in the Circuit Court of the City of St. Louis pursuant to Sec. 108.310 RSMo 1959, V.A.M.S., for a pro forma decree declaring the validity of the proposed issuance of $4,207,000 in sewer bonds, such bonds, as stated, being the remainder of $7,957,000 of sewer bonds authorized to be issued by the qualified voters of the City of St. Louis, at a bond issue election held on August 1, 1944, at which time the qualified voters had approved Proposition No. 5 for the issuance of said bonds. As part of its petition, the petitioner filed as exhibits certified copies of all records, petitions, publications, orders and resolutions and other documents pertaining to the authorization and issuance of said bonds.

The parties agree that all procedural requirements relative to the approval by the voters of the mentioned bonds, and the procedural steps for the issuance of said bonds have been met, as well as the procedural steps for the institution of this proceeding under Sec. 108.310 RSMo 1959.

On April 17, 1962, intervenor, after being permitted by the court to intervene in this action, filed his intervening petition denying the right of the city to issue the remaining bonds on the ground: 1. That the authority of the city was terminated by the adoption of the Plan of the Metropoli-

tan St. Louis Sewer District; and (2) that there had been an unreasonable delay of 18 years, terminating the city's authority to issue the bonds.

The cause was heard on the pleadings, exhibits and evidence adduced by petitioner and intervenor. See Secs. 108.320 and 108.-330 RSMo 1959; Boggess v. Pence, Mo. Sup., 321 S.W.2d 667.

The parties have stipulated that:

"7. The Court heard uncontroverted evidence of the Petitioner-Respondent that there has been a continuing need for the construction, reconstruction, replacing, reconditioning and improving the public sewers in the Mill Creek Valley, Kosciusko, Tandy and Murphy areas in the City of St. Louis, and that this urgent need existed prior to the approval of the said Proposition No. 5 by the voters of the City of St. Louis and continues to the present time. There was uncontroverted testimony that moderately heavy or heavy rainfall in these areas produce flooding conditions on the public streets in these areas, restricting the movement of vehicular traffic due to the fact that the trunk sewer lines (to which street drains are connected) are of insufficient size to handle such rainfall and that flooding of homes and businesses during heavy rains is, and was, common. Further, that these conditions are a direct and immediate threat to the public health, safety and welfare of persons residing within, and businesses located within, those areas.

"8. In order to eliminate these conditions, a contract was entered into between the Metropolitan St. Louis Sewer District, pursuant to Section 3.020(7 and 8) of Article 3 of the plan of the Metropolitan St. Louis Sewer District, and the City of St. Louis, dated March 1, 1962 under the terms of which the City of St. Louis would build, alter, and construct sewers, drains and other related facilities in the Mill Creek Valley, Kosciusko, Murphy and Tandy areas in the City of St. Louis, financed from the proceeds of the sale of said sewer bonds of the City of St. Louis; the issuance of the re-

mainder of said bonds having been authorized by Ordinance No. 50678 of the City of St. Louis. The contract further provides that the Metropolitan St. Louis Sewer District shall inspect such construction and shall accept title to same upon completion. Thereafter the Metropolitan St. Louis Sewer District shall be responsible for the operation, maintenance, and repair of said facilities."

At the trial of the cause, intervenor offered in evidence Articles 3, 9 and 12 of the Plan of the Metropolitan St. Louis Sewer District. Sec. 3.010 of said Article 3 provides for the taking over of all existing sanitary and storm-water sewer systems and facilities of any and all municipalities, sewer districts, and other public agencies within the boundaries of the District. Sections 9.010, 9.050, 9.060 and 9.090 of said Article 9, provide for the method of payment for sewers in the District. Section 12.090 of said Article 12, provides that any outstanding and unpaid sewer bonds or liabilities (on July 1, 1954) of any municipality, sewer district or other public agency situated within the District should not be affected or altered in any way. And see Secs. 30(a) and 30(b), Article VI, Constitution of Missouri 1945.

On April 28, 1962, the trial court rendered its judgment and decree holding:

1. That the adoption by the qualified voters of the City of St. Louis and St. Louis County, of the Plan of the Metropolitan St. Louis Sewer District at a special election held on February 9, 1954, did in no way affect the power, jurisdiction, and authority of the City of St. Louis to issue sewer bonds of such city as authorized by the qualified voters of the City of St. Louis, at an election held on August 1, 1944;

2. That notwithstanding the lapse of time accruing since the date of the 1944 election, there has at no time been an abandonment on the part of the City of St. Louis of its authority to proceed with the issuance of the remainder of said bonds, and

3. That the remaining unissued bonds in the sum of $4,207,000 are in all respects

valid and binding obligations upon the City of St. Louis, according to their terms.

Thereafter, intervenor, within the time prescribed, filed his motion for new trial, which was overruled, and he then filed a notice of appeal to this court.

Appellant and respondent have filed in this court an agreed statement of the case pursuant to Supreme Court Rule No. 82.13, V.A.M.R., which statement has been approved by the trial court; and the cause has been submitted in this court pursuant to the provisions of Secs. 108.340 and 108.350 RSMo 1959.

The appellant-intervenor contends that (a) the authority of the City of St. Louis to issue sewer bonds was terminated upon the adoption of the Plan of the Metropolitan St. Louis Sewer District, and that the issuance of said sewer bonds is contrary to, and militates against Articles 3, 9 and 12 of such plan; and (b) that the lapse of 18 years between the authorization and the proposed issuance of such bonds constitutes an unwarranted and unreasonable delay, so as to terminate the authority of the City of St. Louis to issue said bonds.

Appellant insists that the trial court erred in holding that the adoption of the Plan of the Metropolitan St. Louis Sewer District in no way affected the power, jurisdiction and authority of the City of St. Louis to issue sewer bonds, as authorized by the qualified voters of the City of St. Louis at the election held on August 1, 1944. Appellant says that, under Sec. 3.010 of Article 3 of the Plan of the Metropolitan St. Louis Sewer District, said District acquired complete title, jurisdiction, control, possession and supervision of all existing sanitary and storm-water sewer systems of the City of St. Louis; that said Plan further, under Secs. 9.050, 9.060 and 9.090 of Article 9 of said Plan, provides for the construction and improvement of all sanitary and storm sewers and for the payment therefor; that under Sec. 12.090 of Article 12 of said Plan no provision was made for the issuance of bonds in the future by any municipalities

for sanitary and storm sewers, but that the Plan did recognize that all bonds outstanding and unpaid as of July 1, 1954, were unaffected by the adoption of the Plan. Appellant further says that the City of St. Louis cannot exercise the same power, jurisdiction and control over its sewers concurrently with the Metropolitan St. Louis Sewer District in the same territory.

■ While it is true that, under Sec. 3.010 of Article 3 of said Plan, all existing sanitary and storm-water sewer systems and facilities of any and all municipalities, sewer districts and other public agencies within the boundaries of said District were transferred to and dedicated to the use of, and under the jurisdiction, control and supervision of the Metropolitan St. Louis Sewer District, nevertheless, Sec. 3.020, subdivision 7, of Article 3 of the Plan, fixing the powers of the District, expressly provides that the new District shall have power "To contract with municipalities, districts, other public agencies, individuals, or private corporations, or any of them whether within or without the District, for the construction, use or maintenance of common or joint sewers, drains, outlets, and disposal plants, or for the performance of any service required by the District." It is under this provision that the contract of March 1, 1962, was entered into between the District and the City of St. Louis, in pursuance of Ordinance No. 50678 of the City of St. Louis, as enacted on November 22, 1961, providing for the issuance of the remaining bonds authorized by the election of August 1, 1944. And see Section 3, subdivision 19, of the Plan to the effect that no sewer or drainage facilities may be constructed or reconstructed in the District without the approval, supervision and inspection of the District. The Plan provides for its own method of construction and improvement of all sanitary and storm-water sewers in said District, and expressly provides that, if any existing municipality, sewer district or other public agency situated within the District shall on July 1, 1954, have outstanding and unpaid any sewer

bonds or liabilities, the creation of the District under this Plan they shall not be affected; and that the transfer and dedication of the sewer systems and facilities of any municipality, sewer districts or other public agency, to the uses and purposes of the District, shall not affect or alter in any way the said bonds or liabilities, nor shall it affect or alter the rights or obligations thereunder (Sec. 12.090, Article 12 of the Plan). It is also true that the City of St. Louis cannot exercise the same power, jurisdiction and control over sewers that it previously exercised; and that it cannot exercise such powers concurrently with the Metropolitan St. Louis Sewer District in the same territory (see Wellston Fire Protective Dist. of St. Louis County v. State Bank & Trust Co. of Wellston, Mo.App., 282 S.W.2d 171, 175(7); McQuillin, Municipal Corporations, 3rd Ed., Vol. 2, Sec. 7080, pp. 269, 270), nevertheless these facts do not exclude the City of St. Louis from cooperation with the Metropolitan St. Louis Sewer District, as provided in Sec. 3.020(7) of the Plan, nor do these facts prevent the city from entering into a contract such as was entered into between the city and the District on March 1, 1962, or from passing and putting into effect on November 22, 1961, Ordinance No. 50678 of the City of St. Louis providing for the sale of the remaining unissued bonds, as authorized by the election held on August 1, 1944. We find nothing in the Plan of the Metropolitan St. Louis Sewer District, as adopted at the special election held on February 9, 1954, effective July 1, 1954, which prevents the issuance of the remaining bonds authorized in 1944, nor should the adoption of the mentioned Plan be held to prevent the city's cooperation with the new District. Appellant's first assignment must be and is overruled.

In support of his second assignment, intervenor contends that the delay of eighteen years by the City of St. Louis in issuing the remaining sewer bonds was unnecessary and unreasonable and that it constitutes an abandonment by the city of its

authority to issue the bonds for the purpose authorized in the 1944 election. In argument he seeks to add a further point with reference to change of conditions by reason of the adoption of the Plan of the Metropolitan Sewer District. He cites only Missouri Electric Power Co. v. Smith, 348 Mo. 738, 155 S.W.2d 113 and Fuller v. Knight, 241 Ala. 257, 2 So.2d 605, 135 A.L.R. 760.

Appellant concedes that whether the delay is reasonable or unreasonable depends upon the facts and circumstances in evidence, and insists that in this case there has certainly been a most important intervening fact, to wit: the adoption of the Plan of the Metropolitan St. Louis Sewer District in 1954. In the Missouri Electric Power Company case, supra, it was held that "mere lapse of time, in view of the conceded facts, did not terminate the authority granted by the special election"; that "The court should not substitute its judgment for that of the governing body of the city as to the advisability of proceeding with the registration and sale of the bonds for the purpose intended." The court pointed out that "If a mere delay due to pending litigation could thwart the will of the voters and withdraw the authority given to the city officers to proceed with the mandate of the people for a municipally owned electric light plant, then a way would have been found to effectively prevent such an improvement"; and that, "In addition, in view of the history of such matters in this state, the voters could reasonably have assumed that the matter might be greatly delayed by litigation, and a considerable time elapse between the date of the election and the sale of bonds or the construction of the plant." On the issue of "changed conditions" the court said: "In view of the facts in this case we must and do hold that the lapse of time, coupled with the changed conditions shown in the evidence, did not terminate the authority of the city officials to issue bonds upon the basis of the special election of September 1, 1931." In that case the delay was from September 1, 1931, to April 8, 1940. The court in that case cited and quoted from

the case of McNichols v. City and County of Denver, 101 Colo. 316, 74 P.2d 99, 108, where the rule was stated as follows: "The law applicable is uniformly to the effect that a delay, even of several years, in the exercise of the authority to issue bonds, will not necessarily cause a forfeiture of that authority if, in the light of all the facts and circumstances, the delay was reasonable, prudent, or necessary." Numerous cases are thereafter cited in support of that holding.

The only other case cited by appellant is the case of Fuller v. Knight, supra, 2 So.2d 605, 611(5), where the court said:

"After reviewing the authorities and considering the question before us in all its bearings, we are of the opinion that, the Bond Act of 1913 for Cullman County contemplated the issuance of bonds for the construction and improvement of the public roads of the county, a project to be accomplished as *a continuous undertaking within a reasonable time* for the benefit of the people of the county who ratified the issue of bonds at an election. *Twenty-seven years have intervened.* The electorate of the county has largely changed; an entire change of set up for highway construction, including *State and Federal aid, has intervened.* The fund from the proposed issue of $40,000 cannot now be used for the road improvement contemplated when they were authorized by vote of the people. * * *

"We lay down no hard and fast rule on the question of time limit for such issues. We base our conclusion on the reasonable intendments in the case at hand. We hold that on the alleged authority exhibited in the pleading, the 'additional $40,000 principal amount of bonds' cannot be legally issued." (Italics ours.)

This is the only case cited where the right to issue such bonds has been denied because of lapse of time and changed conditions.

In the case of State ex rel. City of Carthage v. Gordon, 217 Mo. 103, 116 S.W. 1099, 1104 (where there was a delay of 18 months) the court said: "There is nothing disclosed by the record which indicates, or from which it can be conclusively presumed, that the voters of the city have revoked, or intended to revoke, the authority given by the election of March 12, 1907, to issue the bonds in question, or which would justify this court in holding that the time which has elapsed between the election and the presentation of the bonds for registration is so unreasonable as to justify the auditor in refusing to register them."

In the case of State ex rel. School Dist. of Kansas City v. Thompson, 327 Mo. 144, 36 S.W.2d 109, 111(1-2), the court held that where bonds in a fixed amount were duly authorized by the electorate of the municipality that they could be issued and sold *in installments.*

In Stokes v. Montgomery, 203 Ala. 307, 82 So. 663, it appeared that pursuant to a statute then in force a city election was held in 1908 at which a majority of the votes cast were in favor of issuing bonds for a hospital. The court upheld the right to issue and sell such bonds as late as 1919, and this although the form of city government had been changed in 1911, and said: "It would appear that there is no inhibition of the Constitution, statute, or ordinance that would now prevent the board of city commissioners from issuing and selling said bonds or from applying the proceeds as prescribed by law, unless the time elapsing between the authorization by the election and the proposed issue and sale of the bonds has affected the right of the city in the premises. * * * The fact that the bond issue was required to be authorized or sanctioned by a majority vote cast in favor thereof, at the election held pursuant to the statute for such purpose, did not require the issue of the bonds at or within a specified time, since there was no statute to that end. The election was had in conformity with the statutory requirement for the consent of the people to the governing body of the city (mayor and council, or board of city commissioners) to exercise the power at such time thereafter as deemed by such body to be necessary

and expedient. We are of opinion that the bonds in question may be issued and sold at this time, that the proceeds of such sale may be expended for the specific purpose authorized by the people and in accordance with the declared judgment of the board of commissioners. * * * We have sought diligently and found no authority to the contrary. * * * [T]here is nothing disclosed by this record which indicates, or from which it can be presumed, that the voters had revoked, or intended to revoke, the authority given by the election. * * * There was; or is, no statute requiring that said authorized bonds be issued and sold within a, designated time. The necessity for the city hospital and the time of issue and sale of the bonds and the erection of the hospital were left to the sound discretion of the city officials, and we cannot say that this discretion has not been reasonably exercised. By the delay they have imposed no burdens on the people by interest charges in the meantime, and it is presumed that they have proceeded to give the necessary hospital facilities at a time when most needed by the municipality and its residents."

The Stokes case has been widely cited and followed. See Annotation 135 A.L.R. 768. And see 64 C.J.S. Municipal Corporations § 1929d, p. 553.

In Quaid v. City of Detroit, 319 Mich. 268, 29 N.W.2d 687, it was held that: A mere lapse of time between authorization and issuance of bonds, such as sewer and drain bonds, by a city, does not in and of itself show a forfeiture or an abandonment of the right to issue bonds duly approved by the electors and the approval of city's sewer and drain bonds, which were voted by electors in 1928, was not invalidated by city's failure for 19 years to issue the bonds, where city was prevented from issuing the bonds from 1932 until 1945 by conditions beyond its control, due to overall debt limitations imposed by statute and city charter, corporate limits of city were the same as in 1928, proceeds were to be used as originally

proposed, and no abuse of discretion or fraud was shown; and that a Constitutional amendment changing the qualifications of electors who could vote on issuance of public improvement bonds did not invalidate an approval given by electors of city, prior to amendment, of sewer and drain bonds.

In Perl-Mack Civic Ass'n v. Board of Directors, of Baker Metropolitan and Sanitation District, 140 Colo. 371, 344 P.2d 685, it was held that where the issuance of $75,000 in bonds for improvements for sanitation district was authorized by election held in 1952, delay of five years in issuance of bonds was not unreasonable and election was not invalid because of such delay.

In the case of In Re Verde River Irrigation & Power District Bonds, 37 Ariz. 580, 296 P. 260, the court held that, unless the statutes require bonds to be issued within specified period after election authorizing them, time of issuance rests in sound discretion of officials upon whom that duty is imposed, and that seven years elapsed between election authorizing irrigation and power district bonds and the decree of court validating them did not invalidate bonds.

In State ex rel. Boynton, Atty. Gen. v. City of Topeka, 141 Kan. 309, 41 P.2d 260, the court held that, in the absence of a statute requiring municipal bonds to be issued within specified time after election authorizing them, when the bonds shall be issued rests in the sound discretion of municipality; and that authorized bonds may be issued by any municipality from time to time and in its discretion as necessity therefor arises.

In Weathers et al. v. Todd County et al., 271 Ky. 172, 111 S.W.2d 638, the court held that, the fiscal court's delay in issuing the last $17,000 worth of a $300,000 county road and bridge bond issue authorized by voters, did not constitute abandonment of the authority to issue such bonds, although ten years had elapsed since the voters authorized bonds and five years had elapsed since last preceding block of bonds was issued, where proceeds of issue were not needed ex-

cept as bonds were made and issuance of bonds as needed, instead of all at once, and where said delay affected large interest savings. And see Jonson v. Fiscal Court of Muhlenberg County, 272 Ky. 9, 113 S.W.2d 453 (eleven years' delay); State ex rel. Mc-Donald-Coolidge & Co. v. Curry, 136 Ohio 322, 25 N.E.2d 681 (nine years' delay); Covington v. McInnis, 144 S.C. 391, 142 S.E. 650 (seven years' delay).

In the case now before us no ordinance, statute or constitutional provision prohibits the issuance of the remaining bonds authorized August 1, 1944; nor has there been any change in the need for the improvements for which the bonds were voted and authorized. No valid ground is shown why the mere lapse of time alone should bar the issuance of the bonds. Almost half of the authorized issue have been issued and sold during the lapsed period. We find nothing in the record to show any abuse of the city's discretion in not providing for the issuance and sale of the remaining bonds at an earlier date. Nor are any facts shown which tend to show any abuse of discretion in contracting and cooperating with the Metropolitan St. Louis Sewer District. No arbitrary or fraudulent action is charged or shown.

Ordinance No. 50678 of the City of St. Louis providing for the issuance of the remainder of these bonds is presumed to be valid and lawful. "It cannot be presumed that the city was ignorant of its charter powers, or that it deliberately intended to violate the organic law of the state or city. * * * Where an ordinance is legally passed with due authority under the organic law of the state and city, the courts will not declare it unreasonable, unless no difference of opinion can exist upon the question." Wagner v. City of St. Louis, 284 Mo. 410, 224 S.W. 413, 414, 12 A.L.R. 495. The trial court did not err in entering the judgment entered.

The judgment is affirmed.

All concur.