# THE BARBER ASPHALT PAVING CO., Respondent, v. KANSAS CITY HYDRAULIC PRESS BRICK COMPANY et al., Appellants.

### Kansas City Court of Appeals, April 21, 1913.

1. **MUNICIPAL CORPORATIONS: Street Improvement: Guaranty.** A clause in the proceedings to pave a street requiring the contractor to guarantee the pavement to endure for ten years without repair, is within the power of the city. Such guaranty does not mean that the pavement shall not need repair within that time but merely binds the contractor to keep it in repair during that period without further compensation.

2. ————: **Tax Bills: Materials Used: Patented or Monopolized Article.** The designation of Trinidad Lake asphalt as the particular kind of asphalt to be used does not render nugatory the requirement that the work be let to the lowest bidder, although such asphalt is owned and controlled exclusively by one contractor.

3. ————: ————: **Selection of Materials.** Where the ordinance specified a number of kinds of materials and gave the property owners a certain time in which to select the kind, and provided that if they did not do so, the board of public works would make the selection; and after the expiration of this time, the board of public works made the selection and an ordinance was passed confirming the contract let in which the materials selected were named, this was a sufficient selection. Especially where there is no evidence to the contrary.

4. ————: ————: **Delay.** Where the original ordinance authorizing the work specifies no time limit within which the work is to be done, a reasonable time is implied, and where the contract was not let for nearly two years after the passage of the ordinance such delay would prima facie, be unreasonable. And a defense setting up such delay should not be stricken out. Whether a delay is reasonable or unreasonable depends on the facts and circumstances, and no inquiry can be had into the matter when such defense is stricken out. Where the original ordinance implies a reasonable time, this limit must be observed the same as a specified limit.

5. ————: ————: ————. Under an ordinance requiring the work to be done in a reasonable time a contract was let for the work to be done in sixty days with a penalty clause attached. Nothing was done under this contract. Nearly four months later a new contract was let, with precisely the same terms, and the

old contract was cancelled. The work was finished in 60 days under the new contract. The validity of the tax bills depends on whether the reasonable time required by the original ordinance and the first contract was complied with. *Held*, error to strike out that part of the answer setting up the delay and the failure to perform the work under first contract.

6. ———: ———: ———: Contract: Penalty. A contract specifying a certain time in which the work must be done but followed by a clause imposing a penalty of $10 per day, for each day thereafter that the work remains unfinished, gives a reasonable time in which to complete the work.

7. ———: ———: ———: Time Limit: Extension. If the making of the new contract and the cancellation of the old be considered an extension of time by the city, such an extension cannot be granted by the city unless it is made within the reasonable time provided for the work to be done.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Creason* and *Gage, Ladd & Small* for appellants.

*Scarritt, Scarritt, Jones & Miller* for respondent.

TRIMBLE, J.—Suit on special tax bills for paving with asphalt a business street in Kansas City.

The answer set up nine separate and distinct defenses. Some of these were concluded by the verdict of the jury in plaintiff's favor. The others, when carefully analyzed, are found to contain really but four matters of defense, some stating the same defense twice in a different way.

On motion of the plaintiff, the court struck out the third, fourth, fifth, sixth and seventh defenses before entering upon the trial. And we are asked to review this action along with other errors claimed.

We shall first take up the fourth and fifth defenses, they being really directed at one and the same

point. That is, that the pavement was laid under a guarantee that it would be constructed of such materials and in such manner as would enable it to endure for ten years without repair, and that as the pavement did not so endure, the tax bills are void. This point will not avail as a defense. The clause requiring the plaintiff to guarantee the pavement for ten years without repair was within the power of the city to make. [Asphalt Paving Co. v. Ullman, 137 Mo. 543; Seaboard National Bank v. W. S. Woesten, 176 Mo. 49.] This guarantee does not mean that the pavement shall not need repair within that time but merely binds the contractor to keep it in repair during that period without further compensation. [Gilsonite Construction Co. v. Coal Co., 205 Mo. 49.] Hence the tax bills are not void by reason of such guarantee, and the court did not err in striking out said fourth and fifth defenses.

The sixth defense is that a particular brand of asphalt, to-wit, Trinidad Lake asphalt, was required to be used, and, as it was owned and controlled solely by plaintiff, this excluded competition and rendered nugatory the requirement that the work be let to the lowest bidder. This defense cannot be upheld by this court since, whatever might be our views on that matter, we are required to follow the Supreme Court's rulings. That court holds that the designation of such material does not render the tax bill void. [Barber Asphalt Paving Co. v. Field, 188 Mo. 182.] The same doctrine is announced, and reasons therefor given, in Paving Co. v. Hunt, 100 Mo. 22; Verdin v. St. Louis, 131 Mo. 26; and Swift v. St. Louis, 180 Mo. 80. While it is true the decisions in some of these cases last cited were by a divided court, and that tribunal has later manifested a disposition to limit the doctrine, yet we do not think it intended, in the case of Curtice v. Schmidt, 202 Mo. 703, to overturn or abandon it. At any rate we shall continue to fol-

low this doctrine until that court shall clearly and unequivocally set it aside. There was no error in striking out this defense.

The third defense set up in the answer alleged that the ordinance authorizing the work was passed July 30, 1900, and the contract under which the work was done was not let until May 26, 1902; that by reason of the long and unreasonable delay in letting the contract and causing said work to be done, the power to make a contract ceased and the tax bills are, therefore, null and void, of all which plaintiff had notice.

It is held that, *where the original ordinance prescribes the time* in which the work must be done, the authorities must proceed in the usual course of such matters and within the limits thus prescribed, and they cannot abandon an improvement and then after the lapse of a long period of time resume jurisdiction at the place where it was left off. [Marshall v. Wisdom, 127 Mo. App. 640.] It is also well settled that proceedings had under an ordinance which specifies no time in which the work is to be done are not invalid merely because no time is specified in the ordinance. But it is further held, that where the original ordinance specifies no time, a reasonble time is implied. [Ayers v. Schmohl, 86 Mo. App. 349; Heman v. Gilliam, 171 Mo. 258, l. c. 269, 271.] So that, if the ordinance specifies no time, this does not mean that there is no limit upon the time when the work is to begin or in which it is to be finished. All the authorities hold that the time limits provided in the original ordinance must be observed and the work done within those limits or the tax bills will be void. If, therefore, the original ordinance gives a reasonable time for the work to be done, this reasonable limit must be observed just the same as a specified limit would have to be observed had it been imposed. In the case at bar there was a delay of one year, nine months and twenty-three days before the letting of the contract

under which the work was done. This length of time *unexplained* is not a reasonable time. If the contract can be delayed thus long without explanation, what is to prevent a delay of two years, or three or five? When the work was finally begun it was finished within sixty days, consequently, on the face of things, a delay of nearly two years before the work is even begun is unreasonable and beyond the limit of time implied in the original ordinance. What is a reasonable time usually depends upon the facts in the case and must be determined in the light of all the circumstances. [Gunby v. Brown, 86 Mo. l. c. 258.] But the court struck out the defense setting up the fact that there was an unreasonable delay. Hence no inquiry could be made into the question whether, under the facts, the delay was reasonable or unreasonable. This was error. If we approve this ruling by affirming this case we thereby say, in effect, that no delay will invalidate the proceeding where the ordinance does not fix a precise time limit. Because, if an unexplained delay of nearly two years is allowable, where is the limit to be fixed? We do not think the case of Jaicks v. Middlesex Inv. Co., 201 Mo. 111, when carefully examined, holds that if no time is specified in the original ordinance, then no delay in letting the contract, no matter how long nor from what cause, will be sufficient to render the tax bills void. It is true the second syllabus of the case reads as if the opinion were this broad, and the judge, in deciding the case, says on page 114 that the cause of the delay is "immaterial," yet he says it is so "upon the disclosures of the record in this case" and then proceeds to find an exceedingly good reason for the delay and concludes his discussion of such reason by saying on page 116, "We are of the opinion that such delay, *under the facts disclosed,* was insufficient to in any way affect either the validity of the ordinance, or power to contract in pursuance of it or the right of the contractor

to perform the work." Certainly the learned judge who wrote that, never intended that his decision in that case should be authority for the view that no delay of any sort will constitute a defense to the tax bill. Besides, in that case, the delay was one on the part of city authorities only, and the judge in writing the opinion seems to have also had this in mind since he says, on page 115, he is unwilling to deprive the contractor of his money "by reason of any delay or neglect *on the part of the governing board* who had authority by virtue of the ordinance to let the contract." In the case before us, however, as will appear in our discussion of the striking out of the seventh defense, there was a contract entered into with plaintiff and confirmed and thus made final and binding but which was not performed by plaintiff. In other words, so far as the record now stands, there was a delay *participated in by the plaintiff;* and that too in a case where the plaintiff was and could be the only bidder. Under such circumstances shall the property owner be deprived of the defense of delay by having such defense stricken out? We think not. Such defense should have been allowed to be made, so that the reason for the delay could be inquired into. It may be, there was good reason for the delay in letting the contract, that is, the delay was reasonable, in which case the property owner would have no grounds for complaint.

But even if the delay in letting the contract under the ordinance be found to be reasonable when the facts are investigated, there appears to have been two contracts let and the work was not done or begun until after the letting of the second contract, and this brings us to the seventh defense which was stricken out. This defense was based upon the following facts: As said before, the ordinance authorizing the work was passed July 30, 1900. On January 9, 1902, nearly sixteen months later, a contract was let which re-

quired plaintiff to begin work within ten days and complete same within sixty days after confirmation. This contract was confirmed January 27, 1902, which required that "said work shall be completed within sixty days after the approval of this ordinance." The plaintiff did nothing under this contract, however, until May 23, 1902, three months and twenty-six days after its confirmation, when it entered into another contract having precisely the same terms as before, and three days later the city, by ordinance, cancelled and annulled said former contract and approved the contract of May 23, 1902. It was under this last contract that the work was done, and it was commenced within ten days and completed within sixty days after the approval of this last confirming ordinance. No reason appears in the testimony why the plaintiff did not do the work under the former contract. It is the contention of defendants that, if the delay from July 30, 1900, to the letting of any contract by the city is not fatal, still that delay *coupled* with the failure of plaintiff to commence and complete the work under the first contract render the tax bills void. The idea is that after plaintiff had not done anything under the first contract, and the time for doing the work thereunder had long expired, the city authorities were without power to make a new contract and have it confirmed by the city; that the power to contract under the original ordinance of July 30, 1900, became extinct by reason of the above facts, and before anything more could be legally done, it was necessary to start over again.

As stated before, the original ordinance specified no time, and, therefore, a reasonable time is all that is required thereby. The first contract required the work to be "begun within ten days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter with such force as to secure its full completion within sixty days from

the date of its confirmation; the time of beginning, rate of progress, and time of completion being essential conditions of this contract.'' Another provision, however, required that the days lost by reason of injunctions, bad weather, grading, curbing and trenching by other contractors, strikes, or burning of contractor's plant, were to be added to the number of days within which work was to be completed. But as this was followed with a provision requiring a penalty of ten dollars per day if the work was not finished within the time specified, plaintiff had a reasonable time in which to complete the work. [Schibel v. Merrill, 185 Mo. l. c. 547; Heman v. Gilliam, 171 Mo. 258; Construction Co. v. Coal Co., 205 Mo. l. c. 78.] Hence, on this particular feature of the case, and if by reason of the facts, the delay until the making of the first contract was not unreasonable, plaintiff is in this position: Under an ordinance giving it reasonable time, it enters into a contract by which it agrees to commence and do the work required in that time, which, prima facie, is ten days to begin and sixty days to complete. But instead of beginning and attempting to finish, it does nothing. It fails to perform the contract and long after a reasonable time has apparently expired it attempts to cancel said contract and enter into another contract whereby it is given a reasonable time from May 26, 1902, in which to complete the work. If, after a reasonable time has elapsed in which to perform under the first contract, plaintiff can cancel it and make a new one, then there is no reason why it cannot, after the lapse of a reasonable time under it, cancel that contract and make another one, and so on indefinitely, and all of this under an ordinance requiring the work to be done in a reasonable time. But it is claimed that the cancellation of the first contract and the confirmation of the second is an *extension* of the time in which plaintiff could do the work. It is true the city has power to extend the time

by ordinance provided such extension is made before the expiration of the contract and ordinance time. But it has no such power after that time limit has expired. [Neill v. Gates, 152 Mo. 585; Hund v. Rackliffe, 192 Mo. 312.] And in these cases in which it is held that the city has power to extend the contract before it has expired, the contractor had begun the work and was attempting to carry out its terms, but, for good reasons, was unable to complete it within the time, and, as said in the Hund case, supra, l. c. 325, "where for any good reason shown, as the inability of the contractor to procure a portion of the materials necessary for the doing of the work, as appears in this case, the work cannot be *completed,* within the contract time it would be a narrow, strained, unnatural and unreasonable construction of the law to hold that the municipal assembly had not the power, *during the life of the contract,* to extend the time for the completion of the work."

But in the case we are considering the plaintiff did not begin the work or do anything required of it under the old contract nor is there any reason given or shown in the testimony why it did not comply with the obligation imposed upon it by that contract, and if the making of the new contract and the cancellation of the old can be said to be an extension of the time in which plaintiff could complete the work, the city had no power to extend such time unless such extension was made within the reasonable time prescribed by the original ordinance and contract. What is a reasonable time usually depends upon the facts in the case. Sixty days in May might be a reasonable time while the same period in January would not. Especially is this the case where, as here, the contract provides that bad weather, etc., may enlarge the time. So that the question of what was a reasonable time should have been investigated in order that it might be seen whether the extension was legal. But

the court struck out this defense and that question was not investigated. We think this was error. If, in fact, there was good reason for the delay and for the failure to begin and complete the work under the first contract, such as would prevent or excuse the plaintiff from performance thereof, and if by reason of the facts, the new contract was made and the old one annulled by consent within the reasonable time prescribed by the original ordinance, then that fact should be made to appear from the evidence. On the other hand, if there was unreasonable delay before entering into the first contract, or, if after the execution of said first contract, there was an unreasonable delay in performing the work thereunder, and the extension, if it may be so called, was not granted within the reasonable time required, then defendants should be allowed to set up those facts in opposition to the tax bills. But this defense was stricken out, os that nothing of the kind could be shown. Hence the case should be reversed and remanded for a new trial, in order that it may be determined (in case there was no unreasonable delay in letting the first contract) whether or not the reasonable time prescribed by such first contract was complied with, that is to say, whether the extension granted by the new contract was made within such reasonable time. If, under the circumstances, good reason exists for the delay, and the original ordinance has not been violated as to time, and the confirmation of the new contract was a mere extension of that time made when the city had power to make it, then we should be loath to hold as invalid tax bills for public improvements which have been made and upon which contractors have in good faith expended much time and money. This upon the doctrine of a liberal policy toward such improvements announced by the Supreme Court in Gist v. Construction Co., 224 Mo. l. c. 378, *et seq.* But to hold tax bills valid where no good reason is shown for the delay and where, in the

absence of all the facts, the extension was made prima facie after the expiration of the time required in the ordinance and contract, would be opening the door in other similar cases to a method of procedure which would often result in injustice and wrong to the property owner whose only function seems to be to foot the bills.

Defendants also raise the point that there was no legal selection of the materials used. This is based upon the contention that no ordinance was ever passed selecting the material, and that, as it is a legislative act, such selection cannot be delegated to the board of public works. But the procedure required by the charter for paving a business street was followed so far as this point is concerned. [Kansas City Charter 1889, art. 9, sec. 2.] The specifications and ordinance set forth the four kinds of materials recommended by the board of public works but provided that the property owners should have a certain time in which to select one of the four, and that if they did not make a selection, the board of public works should do so. The ordinance further provided that the work should be done in accordance with the requirements of the specifications and the selection made. The property owners did not avail themselves of their right to select, and thereupon the board of public works made the selection. After this had been done and a contract let, an ordinance was passed confirming it which required the street to be paved with the specific materials theretofore selected and which were afterwards used. This was a sufficient selection. In addition to this, the taxbills are made prima facie evidence of their validity. [Kansas City Charter, art. 9, sec. 18.] In the absence of proof to the contrary it will be presumed that the selection of materials was properly made.

Defendants also complain of the following instruction as modified and given by the court: "If the jury

find from the evidence that the work and materials for which the bills in this case were issued was not done and was not substantially according to the terms of the contract read in evidence *and said work and materials were not of any value,* then your verdict must be for the defendant."

This required the jury, before they could return a verdict for defendant, to find not only that the work was not done substantially according to contract but also that the work was not of any value. The jury might have thought that the work was not done substantially according to contract, but that it was of some value and because of this they could not find for defendant. Certainly the jury would be justified in so thinking, as it is the unmistakable meaning of the instruction. Therefore it should not have been given. The case, however, is reversed and remanded on the two grounds above specified. All concur.