MISSOURI ELECTRIC POWER COMPANY, a Corporation, Appellant, v. FORREST SMITH, State Auditor.—155 S. W. (2d) 113.

Division One, July 25, 1941.

Rehearing Denied, October 30, 1941.

*A. P. Stone, Jr.*, for appellant.

*Roy McKittrick,* Attorney General, and *Arthur O'Keefe,* Assistant Attorney General, for respondent; *Joseph T. Davis, James Booth* and *James L. Anding* of counsel.

740

DALTON, C.—Action in equity to enjoin the State Auditor from registering, pursuant to Art. 6, Chap. 16, R. S. 1939, Mo. Stat. Ann., p. 760 et seq., Sec. 2914 et seq., $80,000 of Electric Light Bonds

of the City of Sullivan, dated April 15, 1940. A preliminary injunction was granted ex parte and plaintiff gave bond in the penal sum of $1500 conditioned "as required by law." Defendant answered and files his motion to dissolve the injunction. On motion of defendant at the close of plaintiff's case, a final decree was entered by which the temporary injunction was dissolved and plaintiff's petition dismissed with prejudice. Plaintiff has appealed.

Plaintiff is a property owner and a taxpayer in the City of Sullivan and the owner of a twenty-year franchise, granted by the City on March 9, 1925, to maintain and operate an electric light plant and distribution system in said city, under which franchise it is now operating. There was ▇▇▇ no evidence that the franchise was exclusive.

On September 1, 1931, at a special election, duly called and held in the City of Sullivan, the qualified voters voted 523 to 86 in favor of an $80,000 bond issue for the purpose of erecting a municipal electric light plant and distribution system to be owned exclusively by the City. On September 4, 1931, the Board of Aldermen passed an ordinance declaring that two-thirds of the voters had voted in favor of said proposition. On February 12, 1932, an ordinance was duly passed authorizing the issuance of the said bonds, fixing their form, number, date maturity, interest rate, et cetera. By said ordinance it was "found and determined that it is necessary that all of the bonds so authorized at said special election be issued and delivered forthwith." The ordinance provided that "there shall be issued and hereby are issued electric light bonds of said city in the total principal sum of $80,000," and levied an annual tax to pay interest and provide a sinking fund for payment of the bonds. These bonds were prepared, signed and forwarded to the State Auditor, where they were duly registered, as provided by law, on October 13, 1932.

It is admitted that the transcript of all proceedings with reference to the issuance of said bonds, as on file in the State Auditor's office, "shows a full and complete compliance on the part of the City and City Officials with all conditions and requirements for the registration of said bonds." It is also admitted that "of said bonds . . . so executed, issued and registered following said special election of September 1, 1931, . . . twenty-five bonds in the aggregate principal sum of $25,000 had matured prior to April 8, 1940; but that none of said bonds were sold to any purchaser and no money was received by the city on account thereof, and therefore none of said bonds had been paid by said city." It is further admitted that on April 8, 1940, and pursuant to the terms of an ordinance of said date, "all of the bonds in the aggregate sum of $80,000, dated February 1, 1932, which had been issued, executed and registered as aforesaid . . . were burned and destroyed." The ordinance of April 8, 1940, further repealed the ordinance of February 12, 1932, under which said bonds were authorized. The records of said city further show that all of said

bonds were "completely destroyed by burning." By another ordinance of the same date the Board of Aldermen of said City authorized and directed the issuance of another series of electric light bonds upon the authority of the special election of September 1, 1931, and fixed the denomination of said bonds at $1000 each, numbered from 1 to 80, inclusive, to be dated April 15, 1940, interest at three per centum per annum from date, the maturity dates of the various bonds to be between April 15, 1942, and April 15, 1960, determined the form of the bonds, and levied a tax to provide interest and sinking fund for payment of the bonds.

The ordinance recited that "at no time since the holding of said election on September 1, 1931, has it been the purpose or intention of the Mayor and Board of Aldermen of the City of Sullivan, Missouri, to abandon or renounce the authority granted by the aforesaid election to issue the aforesaid bonds of said City." The ordinance reviewed the history of certain litigation hereinafter referred to, mentioned the maturity of $25,000 of the first bonds, and stated that none of said bonds had been sold because of the litigation which terminated March 30, 1940.

In compliance with the terms of this ordinance, the new bonds were prepared, signed and filed with the State Auditor's office for registration. They were accompanied by the required fee and a transcript of all of the proceedings leading up to, and authorizing, their execution and presentation to the State Auditor for registration. Prior to the registration of these bonds, the temporary restraining order was entered on April 15, 1940. Hon. John L. Graves, bond attorney in the office of the State Auditor, testified that the "bonds have not been registered by the State Auditor as yet, but they would be registered if the temporary injunction heretofore issued in this suit were dissolved."

The evidence disclosed that between September 1, 1931, and April 8, 1940, the following litigation intervened: On September 11, 1931, Mrs. Grace Meyer, an employee of appellant, instituted a suit against the City of Sullivan, its Mayor, City Clerk and the members of the Board of Aldermen to restrain said defendants from issuing, registering and negotiating the first series of bonds. In this suit she was represented by the present attorney for appellant, who testified that he could not say who paid him for his services, but that he was employed by Mrs. Meyer. The suit was later, on February 8, 1932, dismissed by the plaintiff. According to appellant's attorney one of the reasons for dismissal was "that considerable pressure had been brought to bear by local parties on Mrs. Grace Meyer, and an attempt had been made by various methods to intimidate her." While said suit was pending, the City of Sullivan, on December 21, 1931, received bids and let one contract to Fairbanks, Morse and Company for certain generating equipment and another to R. H. Bouligny, Inc., for the

erection and installation of an electrical distribution system for the proposed municipal light and power plant.

On February 6, 1932, and prior to the registration of the first series of bonds, appellant filed a bill in equity to enjoin L. D. Thompson, State Auditor, from registering the said bonds. A preliminary injunction was granted ex parte, restraining the registration of the bonds. Thereafter, on October 11, 1932, appellant voluntarily dismissed said cause without prejudice, and the temporary restraining order was dissolved. Two days later, on October 13, 1932, the said State Auditor registered the said bonds, as hereinbefore stated. On the same day, October 13, 1932, appellant filed a second suit in equity against L. D. Thompson, State Auditor, to restrain and enjoin said defendant from receiving, accepting or registering the said bonds. This suit was subsequently dismissed, May 3, 1933, without trial, since the bonds had been registered without appellant's knowledge before the suit was filed.

On October 24, 1932, appellant filed a suit in equity against the City of Sullivan and its officials attacking the legality of the special election, charging fraud therein, alleging the inadequacy of the proposed bond issue, and seeking to enjoin defendants therein from issuing, negotiating and selling the bonds, and from erecting the proposed municipal electric plant and distribution system. By said suit appellant admits that it attacked "the form, nature, character, sufficiency and legality of the plans and specifications for a proposed municipal electric light plant, which had been prepared by W. A. Fuller and Company," and also the contracts to Fairbanks, Morse and Company and R. H. Bouligny, Inc. Defendants filed an answer and cross-bill, alleging the malicious use of process by appellant to the damage of defendants. A demurrer was sustained to the cross-bill, and the original cause went to trial in January, 1934, in the Circuit Court of St. Louis County. The trial court held the cause under advisement until December 7, 1936, when the issues were found for plaintiff and the relief prayed for granted. On December 28, 1936, a new trial was granted to defendants "because the court erred in enjoining and restraining defendants" (1) from selling the bonds, (2) from entering into any contract for the construction and maintenance of the proposed electric light plant and distribution system, and (3) from levying a tax sufficient to pay interest and constitute a sinking fund. From the order granting a new trial appellant appealed to this court, but permitted the court to dismiss the appeal under the rules and, thereafter, on April 1, 1940, dismissed the cause in the circuit court "without prejudice to the rights of any party thereto."

While said cause was pending, on June 22, 1939, the City of Sullivan, by ordinance, rescinded and cancelled its contract of December 21, 1931, with Fairbanks, Morse and Company and said Company's performance bond was ordered returned. On March 7, 1940, by ordinance,

the contract with R. H. Bouligny, Inc., was rescinded, and all plans and specifications for an electric light plant and distribution system, as theretofore adopted by said city in 1931, were rescinded. Appellant's counsel testified that the "principal subject of inquiry (by said last suit) was as to the validity of the two contracts with Fairbanks, Morse and Company and with R. H. Bouligny, Inc.," and therefore it was dismissed following the cancellation of said contracts. However, the record shows that the suit covered some of the same matters here complained of.

Within seven days after the termination of said litigation, to-wit, on April 8, 1940, the ordinance providing for the issuance of the new bonds was passed, and the new bonds were presented to the State Auditor for registration. The present litigation was then instituted, April 15, 1940.

In addition to the foregoing litigation, in September, 1933, the City of Sullivan made an application to the Federal Emergency Administration of Public Works "for a loan including a grant of $85,-000" for the purpose of financing the construction of the municipal electric light and power plant and distributing system, and submitted plans and specifications. Appellant opposed the City's application at a hearing in Washington, and appellant's attorney testified that, as a result of appellant's opposition, the Board of Review rejected the City's application in February, 1934, on the theory that the project would cost $112,000 and was "economically unsound." During the period subsequent to September 1, 1931, appellant continued to furnish electric light and power to all consumers in the City of Sullivan.

While said litigation was pending, many changes in general conditions and in the City of Sullivan were taking place. The changes mentioned in evidence are as follows: Change in population of the city from 2000 to 2500; increase in the number of appellant's customers for electricity from 505 to 702 in six years; increase in peak demand from 120 to 370 kilowatts in seven years; increase in the general load imposed upon the electric facilities of the city; increase in the consumption of electricity in the city from 443,260 kilowatt hours per year to 796,562 kilowatt hours per year; increase of light wire miles in the city from 36 to 46 miles; increase in transformer capacity from 425 K.V.A. to 597 K.V.A.; thirty-five per cent new construction in appellant's distribution system; increase in gross revenue from the sale of electricity from $26,968.22 to $36,917.60, with a decline in average revenue per kilowatt hour from 6.08 cents to 4.66 cents; increase in outside sources of electric supply (connections with Union Electric and Empire District lines); increase in the cost of an adequate electric plant and system for the City of Sullivan from $80,000 in 1931, $112,648.83 in 1934, $125,000 in 1938, to $166,401 in June, 1940; general increase in cost of Diesel engines and electric materials, apparatus and equipment; and finally, an improved electric service by

appellant and a decrease in appellant's rate schedules from one providing a "top step" rate of 12 cents per kilowatt hour to one providing 7.8 cents per kilowatt hour.

We are first confronted by respondent's motion "to dismiss this appeal for the reason that the issues presented, if any, only constitute a moot question, and for the further reason that appellant's abstract of the record, filed herein, is insufficient for a complete and proper understanding and determination of the questions presented for decision upon this appeal." Considering the second proposition first, upon a careful examination of the matters pointed out in the motion and brief, we think appellant's abstract sufficient, and that it substantially complies with our rules.

With reference to the second point, it is contended that the only issue involved on this appeal is the question of appellant's right to an injunction and that the relief cannot be granted, because the bonds have been registered. In support of the motion respondent has filed two original certificates, signed and sealed by respondent in his official capacity, showing that on July 6, 1940, he cancelled the registration record of the first bond issue dated February 1, 1932, and, thereupon, registered the second bond issue dated February 15, 1940. Respondent insists that no issues remain in the cause to be disposed of.

When this suit was instituted on April 15, 1940, upon the issuance of a temporary restraining order by the trial court, appellant was required to and did give a $1500 injunction bond, "which was conditioned as required by law." Appellant's reply to respondent's motion to dismiss alleges that on or about the 20th of July, 1940, and after the temporary restraining order was dissolved by the court, respondent filed a motion to assess damages in the sum of $1500 upon said preliminary injunction bond and that the said motion is pending and undetermined in the trial court; the determination of the same having been suspended by this appeal, until the original cause can be determined on its merits. Although the said bonds have been registered and an order enjoining the registration thereof would not be issued, yet an issue remains in the case and appellant has an interest in having the same determined, because appellant has incurred liability on its bond and has become liable for the costs of this litigation, should the judgment below be affirmed or the appeal be dismissed. We think the case should, therefore, be determined upon its merits. [Morrison v. Hess (Mo.), 231 S. W. 997, 998.]

Appellant contends that the trial court erred in "dismissing plaintiff's petition with prejudice, dissolving the temporary injunction and restraining order, permitting defendants to go hence without day, and taxing the costs against plaintiff."

The particular section of the statute in question is Sec. 3306, R. S. 1939, Mo. Stat. Ann., p. 762, sec. 2920, which reads as follows: "Before any bond, hereafter issued by any county, township, city,

town, village . . . for any purpose whatever, shall obtain validity or be negotiated, such bonds shall first be presented to the state auditor, who shall register the same in a book or books, provided for that purpose, in the same manner as state bonds are now registered, and who shall certify by endorsement of such bond that all conditions of the laws have been complied with in its issue, if that be the case, and also that the conditions of the contract, under which they were ordered to be issued, have also been complied with and the evidence of that fact shall be filed and preserved by the auditor. . . . *And provided further,* that the remedy of injunction shall also lie at the instance of any taxpayer of the respective city, town, village . . . to prevent the registration of any bonds, alleged to be illegally issued or funded under any of the provisions of this article." At the time this suit was instituted there was a further similar section in force and effect, to-wit: Section 2915, R. S. 1929, Mo. Stat. Ann., sec. 2915, p. 760, but this section was repealed. [Laws 1939, p. 253.]

Appellant first contends that respondent, having registered on October 13, 1932, bonds of the City of Sullivan, dated February 1, 1932, in the aggregate principal sum of $80,000 based upon the special election of September 1, 1931, has no right or authority to register additional bonds in the aggregate principal sum of $80,000, dated April 15, 1940, and based upon the authority of the same special election. Appellant's position is that if defendant be permitted to register the second series of bonds upon the authority of the same election, bonds in the aggregate principal sum of $160,000 will have been validated and respondent will have certified that "all conditions of the laws have been complied with in (their) issue," and negotiable bonds in the aggregate principal sum of $160,000 will have been delivered by respondent to the officers of the City of Sullivan.

Appellant concedes that the evidence filed with and preserved by respondent affirmatively shows that *none* of the first group of bonds were sold to any purchaser; that all of said bonds in the aggregate principal sum of $80,000, dated February 1, 1932, were burned and destroyed pursuant to ordinance, and in the presence of the city officers; that the ordinance authorizing them has been repealed and that a new series of bonds dated April 15, 1940, has been issued pursuant to a new ordinance, and for reasons fully disclosed by the record. But appellant says that "the plain fact remains that, upon the unequivocal authority of the Missouri registration statute, the first set of bonds had been validated and could have been negotiated;" and that "what the City did or did not do with the first set of bonds after registration could have no bearing upon the construction and interpretation of the Missouri registration statute, which fixes and defines the rights and duties of the state auditor with reference to the registration of bonds." Appellant insists that the respondent having registered the first series of bonds aggregating $80,000 and having found

"that all conditions of the laws have (had) been complied with in its issue" respondent "now has no legal right or authority whatever to accept the second set of bonds in the aggregate principal sum of $80,000 and to find that, 'all conditions of the laws have been complied with in its issue.'" Appellant says that "to register such additional bonds would be to validate and *make available for negotiation* (Italics ours) bonds in an aggregate principal sum greater than that authorized by the voters at the special bond election." Appellant's theory is that both "sets" of bonds could not legally be *issued* (as that word is used in the statute), and that "all conditions of the law" could not have been complied with as to "both sets" of bonds. This does not follow. While it is conceded that "the first set of bonds had been validated and could have been negotiated," yet it is also conceded that they were in fact not negotiated or sold; that they never became outstanding obligations' of the City; and that they cannot now be negotiated or sold, because it is admitted that the ordinance providing for their issuance has been repealed, the bonds ordered destroyed and in fact burned and destroyed; and that this was all done prior to the passage of the new ordinance of April 8, 1940, providing for the issuance of the new or second series of bonds, and prior to the execution of these bonds or their presentation to the respondent for registration. Therefore, on the facts here, there could not be, and were not, two sets or series of bonds based upon the same special election in existence at the same time, or which could have been available for negotiation or sale at the same time, if the second set be registered. Respondent was not requested to register two sets of bonds to be available for sale at the same time, or to register the second set until after proof had been made (1) that the first set was not sold; (2) that they had never become obligations of the City; (3) that they had been destroyed; and (4) that the ordinance authorizing their issuance had been repealed.

Appellant contends that the words "issued" and "issue" as used in the statute (Sec. 3306, supra), refer to the preparation and execution of the bonds and to acts or steps taken prior to the presentation of the bonds to the State Auditor, that is, to steps taken prior to the negotiation or sale of the bonds; that the State Auditor could investigate only what had occurred prior to the presentation of the bonds for registration, in order to determine "that all conditions of the law have been complied with in its issue," citing Prickett v. City of Marceline, 65 Fed. 469, affirmed 69 Fed. 462; State ex rel. Dexter v. Gordon, 251 Mo. 303, 158 S. W. 683; Moller v. City of Galveston, 23 Tex. Civ. App. 693, 57 S. W. 1116; Walton v. Arkansas Construction Commission (Ark.), 80 S. W. (2d) 927, 929, and other cases. Appellant insists that the Board of Aldermen of the City of Sullivan used the words in the same sense in their ordinance of February 12, 1932, wherein it is stated that the board found and determined it

necessary that all of the bonds authorized by the special election should "be issued and hereby are issued" and that in making the application for the P.W.A. grant it was further stated that the City "had voted and issued" general obligation bonds. Appellant then states that "the City of Sullivan had and has the right to *issue* bonds only in the aggregate principal sum of $80,000 upon the authority of the special election of September 1, 1931," and proceeds to argue the matter as if the word "issue" was used in the sense of "placing the bonds in circulation by sale and delivery to the purchaser." [See, State ex rel. Wm. R. Compton Company v. Walter, 324 Mo. 290, 23 S. W. (2d) 167, 172.] Of course the city could not sell "two sets" of bonds, but it is apparent that the city has not negotiated nor attempted to negotiate "two sets," and that respondent is not threatening to approve two series of bonds which might be negotiated or sold. The officers of the City, under the facts here, did not exhaust their powers by the execution and later destruction of the first series of bonds, nor did respondent exhaust his powers under the statute by registration of the first "set" of bonds, if the "second set" otherwise complied with the statute. No authorities are cited by either of the parties with reference to the respondent's authority to register the second series on the facts stated. The contention is overruled.

█ The second point raised by appellant is that "by reason of lapse of time, coupled with changed conditions, the authority of the city officials to issue bonds upon the special election of September 1, 1931, has terminated; and that said special election will no longer be accepted as expressing the present sense of the voters of the City of Sullivan." At the time the bonds in question, dated April 15, 1940, (referred to as the second issue) were presented to the respondent to be registered, they were accompanied by a 26 page transcript of all proceedings relating to said issue, and certified copies of the records of said City, as hereinbefore mentioned.

The ordinance of April 8, 1940, reviewed the history of the litigation with reference to the first series of bonds and its termination on March 30, 1940. It recited that said city had been unable to proceed with the issuance and sale of said bonds because of said litigation; that at no time had it been the purpose of said city to abandon or renounce the authority granted by said special election, but its purpose had been to proceed with the exercise of said authority when all of said litigation should be disposed of. Accordingly the entire matter was presented in the form of "authentic copies of records . . . showing all conditions of the law were complied with in the issuance of the bonds." [State ex rel. School District of Affton v. Smith, 336 Mo. 703, 80 S. W. (2d) 858, 859.] Prima facie the delay was explained on the face of the records.

Appellant says that under Section 7369, R. S. 1939, Mo. Stat. Ann., p. 5837, sec. 7218, the purpose of holding a special election is "for

750 the purpose of testing the sense of the voters'' upon the proposition submitted; that the expressed sense of the voters on the proposition ''Shall the City of Sullivan, Missouri, issue its Electric Light Bonds in the sum of $80,000 for the purpose of erecting a municipal electric plant and system for said city, as expressed September 1, 1931, may have changed, in view of the changed conditions subsequent to said election, and particularly so in view of the lapse of time between September 1, 1931, and April 8, 1940; that ''there must be and is a limit upon the period of time, during which any given election may be held to signify and express the sense of the electorate; and that, therefore, there must be a limit upon the period of time within which the officials of that political subdivision may act upon the purported authority of such election.'' Appellant's position is (1) that more than a reasonable time has elapsed since the election and the city officials are without authority to proceed with the ordinance dated April 8, 1940; and, in effect, that want of authority appeared from the face of the records presented to respondent; and (2) that in view of changed conditions ''it would be inequitable, improper and unjust to assume that the election of September 1, 1931, reflected the sense and will of the voters of the City of Sullivan on April 8, 1940.'' On the basis of these two propositions, appellant contends respondent may be enjoined from registering the bonds.

The statute requires only the testing of the sense of the voters on the proposition submitted at the date of the special election, not at any subsequent date and not at the date of the registration of the bonds with the State Auditor, nor at the time when the bonds, if authorized, are negotiated or become obligatory. [See, State ex rel. Dexter v. Gordon, supra, 251 Mo. 303, 310, 158 S. W. 683.]

Was the delay from September 1, 1931, to April 8, 1940, unreasonable, under the facts of this record? Respondent says the rule is that ''a delay must be for an unreasonable length of time indicating an abandonment in order to divest the city of its authority to issue bonds.'' The rule is stated in 19 R. C. L. 1000, sec. 294, as follows: ''All that is required is that the municipality shall proceed with reasonable promptness to exercise the authority given to it at the election, and if this is done the fact that the body of the taxpayers may have changed since the election was held does not affect the validity of the bonds issued as security for the debt.''

In the case of McNichols v. City and County of Denver (Colo.), 74 Pac. (2d) 99, 108, the rule is stated as follows: ''The law applicable is uniformly to the effect that a delay, even of several years, in the exercise of the authority to issue bonds, will not necessarily cause a forfeiture of that authority if, in the light of all the facts and circumstances, the delay was reasonable, prudent, or necessary.'' [See also: State ex rel. City of Memphis v. Hackman, 273 Mo. 670, 702, 202 S. W. 7, 16; State ex rel. City of Carthage v. Gordon, 217 Mo.

103, 122, 116 S. W. 1099; Barber Asphalt Paving Company v. Kansas City Hydraulic Press Brick Company, 170 Mo. App. 503, 506; State ex rel. Dexter v. Gordon, supra, 251 Mo. 303, 324, 158 S. W. 683, in minority opinion; Heman Construction Company v. Lyon, 277 Mo. 628, 211 S. W. 68, 70; Jones v. Barber Asphalt Paving Company, 174 Mo. App. 393, 405, 160 S. W. 276, 280; Nall v. City of Elizabethtown, 200 Ky. 321, 254 S. W. 893; State ex rel. Boynton v. City of Topeka (Kan.), 41 Pac. (2d) 260, 262.]

Whether a delay is reasonable or unreasonable depends upon the facts and circumstances in evidence. No other cause for the delay is shown by the evidence, other than the continuous litigation mentioned, supra. No intent to abandon is shown and, accordingly, we may infer and find in accordance with the terms of the ordinance that the delay was due to the litigation. Appellant insists that the city officials could have proceeded regardless of the litigation, since restraining orders were in force for only nine months during said period. The effect, however, of such litigation upon the marketing and sale of bonds is well known. The officers of the city acted promptly each time upon termination of litigation. We hold that mere lapse of time, in view of the conceded facts, did not terminate the authority granted by the special election. [44 C. J. 295, sec. 2460.] The court should not substitute its judgment for that of the governing body of the city as to the advisability of proceeding with the registration and sale of the bonds for the purpose intended. If a mere delay due to pending litigation could thwart the will of the voters and withdraw the authority given to the city officers to proceed with the mandate of the people for a municipally owned electric light plant, then a way would have been found to effectively prevent such an improvement. In addition, in view of the history of such matters in this State, the voters could reasonably have assumed that the matter might be greatly delayed by litigation, and a considerable time elapse between the ▮▮▮ date of the election and the sale of bonds or the construction of the plant.

Does the fact of "changed conditions" shown by the evidence alter the situation, where the delay is otherwise reasonable? Appellant says that there have been "many significant and important changes in conditions which would exercise a very substantial influence upon the sense of the voters as to whether or not so-called electric light bonds in the aggregate principal sum of $80,000 should be issued." The "changed conditions" referred to have been fully stated. For the most part they are due to the normal growth of the community, and in view of the lapse of time were to be expected. However, if the delay was not unreasonable, the "changed conditions" are not material to the issues here since they fail to show any reason for granting equitable relief to appellant. Appellant is in no position to complain either of the lapse of time or of the change in conditions since it is

directly responsible for the delay of which it complains, during which all of the changes mentioned occurred, and some of the changes were of its own making.

In view of the facts in this case we must and do hold that the lapse of time, coupled with the changed conditions shown in the evidence, did not terminate the authority of the city officials to issue bonds upon the basis of the special election of September 1, 1931.

Appellant finally contends that the proceeds of an $80,000 bond issue, in view of present conditions, would not be adequate to construct a suitable electric light plant and distribution system for the City of Sullivan in 1940, or at the present time, and that the city officials, in attempting to proceed, have been guilty of constructive or legal fraud, and, therefore, the registration of the bond by respondent should be enjoined. Substantially the same issues as to inadequacy of the bond issue and fraud on the part of the city officials were raised in the prior suit of appellant against the City of Sullivan and its officers, instituted on October 24, 1932, and pending thereafter until April 1, 1940, when it was voluntarily dismissed by appellant. It is now insisted that the city officials have admitted that an adequate electric light plant and system "to provide service to all present customers within the city limits" and to construct a "complete municipal electric light plant and distribution system adequate for the City of Sullivan" would have cost $80,000 in 1931, $85,000 in 1933, $112,000 in 1934, and $125,000 in 1938; and that according to appellant's evidence the present cost of such a generating plant and distribution system would exceed $165,000. Appellant particularly stresses the "marked changes in conditions bearing upon the contemplated project which appellant claims are known to and recognized by the city officials, including greater demand for electricity, requiring larger and more generating units and greatly increased costs." It contends that the project cannot be completed with the proposed bond issue proceeds, on a scale suitable for the present needs of the city, and that to permit the respondent to register the bonds and thereby permit the city to proceed "constitutes a flagrant and unexplained misuse of power which has been entrusted to them for the public benefit," and therefore constitutes a constructive or legal fraud upon the taxpayers. Appellant makes much of the fact that its evidence was uncontradicted, but in any event the weight and value of the evidence and the credibility of the witnesses was in the first instance for the trial court. Appellant's witnesses were carefully cross-examined, the basis of their several estimates was fully disclosed, and it appeared that appellant's present facilities in said city might be duplicated with the proceeds of the proposed bond issue. Appellant insists that it uses its plant only as a "stand-by" for emergency purposes and that the municipal plant would have to be sufficient for all emergencies, so that part of the equipment might be shut down

for repairs and the plant still function without the aid of an outside source of supply. The city and its officials are, of course, not bound by the plans and specifications suggested by appellant's witnesses as to the kind and character of light plant and distribution system to be built. The plans and specifications of the plant and system to be built, and which the city now proposes to build, are not before us on this record.

The city and its officers are not parties to this proceeding, which concerns only the right of respondent to register the bonds. We think the evidence fails to disclose any breach of legal or equitable duty on the part of the city officials. On the other hand, it is apparent that the people of Sullivan had the authority to vote an indebtedness upon the city for the purpose ▮ of building a municipal light plant and distribution system. This they did. It is also apparent that they have maintained in office officers who have continued the fight on behalf of said city and resisted the various suits filed by appellant to impede the carrying out of their expressed desires. We are unable to see how, under the facts of this case, the efforts of the city officials to carry out the mandate of the people could be a legal or constructive fraud. Whether or not it was expedient to vote the indebtedness or the amount entirely adequate, is a matter for the voters of the City of Sullivan and its duly authorized representatives to decide. [Missouri Power & Light Company v. City of Pattonsburg, 343 Mo. 1128, 125 S. W. (2d) 20, 22; Missouri Service Company v. City of Stanberry, 341 Mo. 500, 108 S. W. (2d) 25, 33.] We see no proper ground for a court of equity to interfere with the registration of said bonds. The trial court did not err in dismissing the petition and dissolving the temporary injunction.

The judgment is affirmed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.