W. C. BOWLING, C. C. Bowling and Juliette Bowling Rollins, Appellants,

v.

John LONGWELL, Dorsey Bass, Clyde Cunningham, Ira L. Davis, Richard Knipp, individually and constituting the City Council of the City of Columbia, Missouri, Don F. Allard, City Manager, and the City of Columbia, Missouri, a municipal corporation, Respondents.

No. 51572.

Supreme Court of Missouri, Division No. 1.

Feb. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied March 14, 1966.

Terence C. Porter, Columbia, for appellants; Welliver, Porter & Cleaveland, Columbia, of counsel.

George F. Nickolaus, City Counselor, Columbia, for respondents.

HIGGINS, Commissioner.

Appellants' petition for declaratory judgment and injunction was dismissed, and we have appellate jurisdiction in that the petition is based on contentions that certain ordinances of the City of Columbia are unconstitutional because they impair rights of contract and take property without due process of law in violation of Article I, Section 13, Constitution of Missouri 1945, V.A.M.S., and Article I, Section 10, and Amendment XIV, United States Constitution.

Appellants filed this action March 24, 1965, as residents and taxpayers of the City of Columbia, Missouri. They also identify themselves as defendants-landowners in Case No. 47747, also in the Circuit Court of Boone County, instituted by the City of Columbia February 26, 1965, under the authority of Council Bill No. 12–65, to acquire certain land from them for use as an off-street parking facility; and they are further identified as the owners of Bond No. 479 which is one of a series of parking facility revenue bonds issued pursuant to Ordinance 1244 of May 18, 1959.

On September 27, 1955, the City of Columbia, by special election, authorized the issuance of $1,250,000 in negotiable, interest-bearing revenue bonds for the purpose of acquiring land and constructing off-street parking facilities with principal and interest to be paid solely from the proceeds from operation of such facilities.

The first plan for construction and operation of off-street parking facilities utilizing the bonds was known as the "Ramp Plan." It was adopted by the council March 4, 1957, but rejected through referendum election May 7, 1957.

On May 18, 1959, the council adopted Ordinance No. 1244 aforesaid under which the city acquired land, constructed parking facilities, and authorized payment for same by the issuance and sale of $750,000 of the $1,250,000 revenue bonds authorized by the special election of September 27, 1955. Ordinance 1244 defined "parking facilities" to "mean and include all motor vehicle parking facilities of the City of Columbia, Missouri, including but not limited to all parking meters or devices used in connection with the on-street and off-street parking of motor vehicles, all City-owned or operated parking lots and other facilities which provide public parking for motor vehicles, and all extensions, improvements, enlargements, and additions to the said motor vehicles parking facilities of said City * * *." Ordinance 1244 contained other covenants to protect and preserve the security of bondholders: " * * * the said City covenants and agrees * * * that it will cause the said parking facilities continuously to be operated in such manner and under such conditions as to provide revenues and receipts sufficient to pay the principal of and the interest on this bond and the issue of which it forms a part, * * * in the event that parking facilities, other than those herein provided for, shall be constructed hereafter and placed in operation by the City of Columbia, the rates, rentals and charges for the use of such additional parking facilities shall be so fixed that the revenues and receipts from the parking facilities herein pledged shall not be thereby adversely affected." In addition, Ordinance

1244 gave bondholders a lien upon all revenues and receipts from such "parking facilities" and provided that the city "will not voluntarily create or cause to be created any debt, lien, charge, or encumbrance having priority to or parity with the lien of the bonds issued under this Ordinance upon any of the revenues and receipts pledged to the payment of the bonds * * * unless * * * provision shall have been made for the payment in full of the said outstanding bonds * * *," or unless the average annual revenues for the next preceding three years plus future average annual revenue shall equal or exceed average annual expenses of operation and maintenance of a new parking facility plus 150 per cent of the highest amount thereafter required in any year to pay principal and interest on the original issue of bonds and any new issue of bonds contemplated in connection with any new facility. The last provision is required to be determined and certified by independent consulting engineers with a national reputation in connection with parking facilities.

On July 20, 1964, the city employed a firm of city planners to determine the feasibility of locating a certain parking facility at Eighth and Cherry Streets, and appellants interpret the reports of that firm, made August 28, September 4, and September 10, 1964, to show that proposed facility to be economically unsound and that it would not meet the test for the issuance of additional bonds previously described in connection with Ordinance 1244.

On November 2, 1964, the city employed an architectural firm to prepare sketches, cost estimates, and feasibility recommendations for a parking facility at Eighth and Cherry Streets.

On January 4, 1965, the city adopted a resolution, Council Bill No. 11–65, declaring the necessity for construction of an off-street parking structure at Eighth and Cherry Streets, at an estimated cost of $350,000, to be paid from the issuance and sale of all or part of the $500,000 of bonds remaining from the original $1,250,000 authorization, and on February 1, 1965, the city enacted an ordinance, Council Bill No. 12–65, which authorized acquisition of land and construction of the parking facility described in Council Bill No. 11–65, providing further that bonds in payment of same be payable solely from the operation of such parking facilities and from on-street parking meters.

Count I of the petition prays:

In paragraphs 1, 2, 3, 5, and 6 for declarations that Council Bills 11–65 and 12–65 are inoperative, void, and without force of law because they impair the right of contract under Ordinance No. 1244 in violation of Article I, Section 13, Constitution of Missouri, and Article I, Section 10, United States Constitution, and are thus arbitrary and capricious;

In paragraphs 4, 7, and 8 for declarations that enforcement of Council Bills 11–65 and 12–65 would result in the taking of private property without due process of law in violation of Article I, Section 10, Constitution of Missouri, and Amendment XIV, United States Constitution; that defendants are thus without authority to proceed with condemnation in Cause No. 47747; and for an order restraining and enjoining defendants from proceeding under Council Bills 11–65 and 12–65 and with Cause No. 47747.

Count II, in addition to matters previously recited, alleges that by reason of lapse of time coupled with changed conditions, the authority of the city to issue bonds upon the special election of September 27, 1955, has terminated, and the prayer is for a declaratory judgment to that effect and for an order restraining the city from proceeding until the issues of this cause be determined.

The court sustained defendants' motion to dismiss and dismissed the petition without specifying any ground for dismissal.

■ We have previously grouped paragraphs of appellants' prayers for relief ac-

cording to their subject matter. The first such grouping is of paragraphs 1, 2, 3, 5, and 6 of Count I which seek declarations as to whether Council Bills 11–65 and 12–65, or either of them, impair contractual obligations of Ordinance 1244 under which appellants' bond was issued, and, if so, whether they are thus arbitrary, capricious, and void.

Appellants' petition concedes that the city "has enacted no legislation * * * providing the rate of interest, maturity dates, denomination, or other details with respect to the $350,000.00 in * * * bonds authorized to be sold under * * * Council Bill No. 11–65 * * *."

Our own reading of Council Bills 11–65 and 12–65 verifies appellants' concession and, in addition, we note that neither makes any provision in conflict with Ordinance No. 1244 or with respect to class or preference, or whether any bonds there referred to would be on a par, superior, or subordinate to appellants' bond and all others issued under Ordinance 1244. Neither bill authorizes the issuance of any bonds and they speak only of acquiring land and constructing additional parking facilities to be paid for by bonds. Plaintiffs do state "upon information and belief that it is the intention and plan of the defendant City of Columbia to issue said bonds (those mentioned in Bills 11–65 and 12–65) at par or with parity to the remainder of the outstanding bonds of the $750,000.00 issued, authorized and sold by virtue of Ordinance No. 1244 * * *." Such allegation, however, is not borne out by the provisions of Bills 11–65 and 12–65 and, if the bonds for additional facilities as mentioned in Bills 11–65 and 12–65 were to be issued junior or subordinate to appellants' bond, then appellants' security might well be enhanced by any additional parking facilities constructed with such new or additional bonds. Certainly it does not yet appear that the proposed bonds will compete with the older bonds. Under such circumstances, the request of appellants for relief in para-graphs 1, 2, 3, 5, and 6 of Count I on the theory of impairment of contract does not present a justiciable controversy because the question presented is hypothetical and assumes an issuance of competing bonds. It is thus advisory, premature, and not "ripe for determination." City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W. 2d 411; Transport Mfg. & Equipment Co. v. Toberman, Mo., 301 S.W.2d 801, 806 [3, 4]; City of Creve Coeur v. Creve Coeur Fire Protection Dist., Mo., 355 S.W.2d 857, 859 [2–6]; M.F.A. Mut. Ins. Co. v. Hill, Mo., 320 S.W.2d 559, 564 [8].

By paragraphs 4, 7, and 8 of Count I appellants seek declarations as to whether proceedings in condemnation would result in taking of private property without due process of law and whether respondents are entitled to proceed with their condemnation suit, Cause No. 47747, in Boone County Circuit Court.

According to their brief, "appellants are asking for a declaration as to whether the ordinance which enables the acquisition of their property is unconstitutional and invalid because it impairs the obligation of contractual obligations owed to them as bondholders."

We have already demonstrated that appellants' petition does not present a justiciable issue by way of matters contained in the ordinance of condemnation, Bill No. 12–65, impairing contractual rights under Ordinance 1244 which set the conditions of appellants' bond and, since the issue of impairment is not now present, this request for declarations in respect to respondents' right to proceed in condemnation and for injunction against such proceedings based on alleged impairment of contract is also without merit. Lester Real Estate Co. v. St. Louis, 169 Mo. 227, 69 S.W. 300, 302.

Appellants contend that their request for declarations and injunction in Count II "challenges the authority of the respondents to issue the balance of the $1,250,000

in parking facilities revenue bonds 9 years and 3 months after they were voted on by the electors of the City of Columbia."

▮▮ Whether a city's authority to issue bonds terminates by reason of a lapse of time depends upon the facts and circumstances of the particular case. See Missouri Electric Power Co. v. Smith, 348 Mo. 738, 155 S.W.2d 113, in which lapse of time between September 1, 1931, when special election was held, and April 8, 1940, when ordinance was passed authorizing issuance of bonds, did not terminate authority granted by special election; and Petition of City of St. Louis, Mo., 363 S.W. 2d 612, in which lapse of 18 years between authorization and proposed issuance of bonds did not terminate authority to issue bonds. Here, appellants relate the 9 years and 3 months' lapse between authorization and proposed issuance to the referendum defeat of the first attempt to issue part of the bonds, and the matters of "change of population," "decreased downtown parking demand," "shift of retail establishments to shopping centers," "relocation of central business district," "increased land values," discussed in the feasibility reports referred to and attached to the petition. None of such matters show any intent by the city to abandon the authority to issue bonds given by the election, Missouri Electric Power Co. v. Smith, supra, l. c. 120 [6]; nor do they constitute an abuse of the city's discretion in not proceeding with issuance and sale of such bonds at an earlier date, Petition of City of St. Louis, supra, l. c. 619[2]; and the request for declaration and injunction on this count is also without merit.

The trial court did not err in dismissing the petition, and the judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.